## FUTROVSKY et al. v. UNITED STATES.
### No. 5697.

Court of Appeals of the District of Columbia. Decided June 26, 1933.

Alvin L. Newmyer, Lewis H. Shapiro, William B. Wolf, and David G. Bress, all of Washington, D. C., for appellants.

Henry H. Glassie, Alex H. Bell, Jr., and Arthur G. Lambert, all of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal by owners of a parcel of real estate in the city of Washington taken by the United States in condemnation proceedings under a judgment after verdict.

The proceedings were instituted in the Supreme Court of the District of Columbia under certain acts of Congress authorizing the government building program for the District of Columbia.

The property in question is lot 817 in square 461 on the official plats, improved by a brick building numbered 215 Seventh street, used by the appellants in a meat business.

The controversy here concerns certain refrigerating machinery which the owners contend had in their time become part of the realty and should therefore be taken and paid for in the condemnation, but which the government contends remains personalty and should be removed or abandoned by the departing owners. The record shows twelve assignments of error, nine of which are based on rulings excluding evidence touching the refrigerating plant, two are based on exceptions growing out of the prayers and instructions, and the twelfth is based on the alleged inadequacy of allowance by the jury. The

record as brought up is insufficient to properly present the questions raised, and, even if the alleged inadequacy of allowance was fully open on appeal here, which is not the case, the record does not furnish material enabling us to deal with it, for it gives only the evidence of cost from two witnesses for the owners, which do not support each other, and gives no evidence whatever of value from the government witnesses.

And so with the two assignments based on the instructions, for the record contains no prayer offered by the owners and rejected by the court, nor the general charge as given to the jury, while the designation of record filed by the appellant with the clerk below contains no order for either.

All remaining exceptions are based on rulings, or alleged rulings, excluding evidence touching the refrigeration plant or parts thereof, though in several instances we do not find in the record rulings complained of in the assignments of error.

█ The rule applicable to so-called fixtures in buildings taken in federal condemnations is that, if they can be removed without substantial injury either to the real estate or to the fixtures, they remain personalty and need not be taken as part of the realty.

█ This record contains no evidence of injury to the fixtures by removal thereof; and the only evidence tending to indicate injury to the realty is the statement of a witness that the unscrewing of bolts to remove the York refrigerating machine would deface the concrete floor under it.

But this property is taken over only to be taken down, and, however the question might stand as between a landlord and his departing tenant, the incidental defacing of a concrete floor is no such substantial damage to the real estate as the rule contemplates between the parties to this proceeding.

The discussion of the refrigerating plant at the trial divided the subject into two parts, first, what they spoke of as the "cooler proper"; and, second, all the remainder of the refrigerating machinery and equipment. The cooler proper was the largest and most important item, and consisted of a refrigeration room built into the walls of the building with metal and cement, insulated with cork and otherwise, in a substantial and permanent manner.

All evidence offered by the owners concerning this room was received; which evidence indicated a net reproduction cost of $4,666; which went to the jury along with the other evidence, and which must be taken as having duly entered into their verdict as rendered. The other items of equipment involved were a York refrigerating machine, an electric motor to drive it, an ammonia liquid receiver, certain meat tracks, switches, and scales, certain refrigerating brine pipe laid in a conduit under ground, an ammonia condenser consisting of coils of pipe cut to fit the building, and certain other coils of pipe also cut to fit the building. All evidence touching these matters came from a refrigeration engineer produced by the owners, who testified that the plant was suitable for its purposes; had been installed by the owners five or six years before the trial; that he reached its present reproduction cost by adding 25 per cent. in 1931 to its cost in 1925, and then deducting 3 per cent. for depreciation by use. He produced a schedule or estimate covering the plant as a whole, which on objection was conceded to be inadmissible as including items that were clearly chattels.

Counsel for the owners thereupon asked and obtained leave to withdraw this witness and recall him later with a detailed schedule dealing separately with the various items in dispute, and upon his return he testified at length.

The owners conceded that the meat tracks, switches, and scales remain personalty.

Their expert witness testified that the York refrigerating machine and its electric motor were delivered separately to the building and assembled therein; that the York machine could be unfastened and removed; that the motor could be unbolted and removed; that the ammonia liquid receiver is a tank fastened on brackets and could be unscrewed and removed; that the refrigerating brine pipe conduit was laid in a ditch under ground, covered up, and invisible; that the ammonia condenser consists of pipe coils cut to fit the building; and that certain other coils of pipe had been cut to fit the building.

No evidence was offered to show that the removal of any of these chattels would cause injury either to the real estate or to the chattels, and the only articles which from their description appear to be subject to such injury were the pipes cut to fit the building.

But the expert was not questioned concerning these items separately, and it is clear that all the refrigerating equipment was installed as a necessity of the business and not as an improvement of the real estate.

█ While the constitutional and statutory law of many of our states makes provision

for consequential damage or incidental loss resulting to the citizen upon the taking of his property by eminent domain, there is no such element in federal condemnations.

Here all that can be taken is the real estate, and all that can be recovered is the reasonable value thereof.

The inconvenience and expense of removing a going business and its equipment from property so taken cannot be paid for directly, and cannot operate indirectly to change a chattel into real estate.

We find no error in the record, and the judgment is therefore affirmed.

This proceeding was brought under the Act of May 25, 1926, c. 380 (44 Stats. 630 [40 USCA § 341 et seq.]), and the following authorities are believed to support this opinion: Wiggins Ferry Co. v. O. & M. Ry., 142 U. S. 396, 12 S. Ct. 188, 35 L. Ed. 1055; Boston Chamber of Commerce v. Boston, 217 U. S. 189, 30 S. Ct. 459, 54 L. Ed. 725; Bothwell v. U. S., 254 U. S. 231, 41 S. Ct. 74, 65 L. Ed. 238; Joslin Mfg. Co. v. Providence, 262 U. S. 668, 43 S. Ct. 684, 67 L. Ed. 1167; Campbell v. U. S., 266 U. S. 368, 45 S. Ct. 115, 69 L. Ed. 328; Mitchell v. U. S., 267 U. S. 341, 45 S. Ct. 293, 69 L. Ed. 644; U. S. v. Meyers (D. C.) 190 F. 688; Gershon v. U. S. (C. C. A.) 284 F. 849; In re Lexington Motors Co. (C. C. A.) 294 F. 233; In re U. S. Commission, 54 App. D. C. 129, 295 F. 950.

Affirmed.