## GENERAL MOTORS CORPORATION v. UNITED STATES.

### No. 8331.

Circuit Court of Appeals, Seventh Circuit.

Feb. 11, 1944.

Harry S. Benjamin and Henry M. Hogan, both of Detroit, Mich., and Preston Boyden and Robert S. Hunter, both of Chicago, Ill., for appellant.

J. Albert Woll, U. S. Atty., of Chicago, Ill., Norman M. Littell and Wilma C. Martin, both of Washington, D. C., Clarence W. Beatty, Jr., Asst. U. S. Atty., of Chicago, Ill., and Vernon L. Wilkinson, of Washington, D. C., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a condemnation judgment, entered February 12, 1943. The suit was commenced by the United States on June 8, 1942, to acquire the temporary use of a part of defendant's warehouses needed in connection with the establishment by the War Department of a Signal Corps depot in Chicago. On January 1, 1942, the government sub-leased about half of the warehouse from the defendant. There is involved in this proceeding the remainder of the warehouse, or 93,673 square feet.

The building involved is a single large, one-story building, located at the southwest corner of 65th Street and Lavergne Avenue in the Clearing district. The property condemned was being used by the defendant as its master warehouse for the storage and distribution of Buick, Oldsmobile, Pontiac and Chevrolet parts. Defendant had installed equipment on the premises costing approximately $101,000, consisting mostly of bins and other facilities for the necessary operation of its business. At the time of the taking, there was located on the premises an inventory of about $250,000 of parts and machinery. About one week after the suit was filed, defendant was notified by an agent of the government that it was trespassing upon government property and that if defendant did not vacate, soldiers would be called in and move defendant out on the street. The business was discontinued, and some five weeks were spent in moving the property and in preparing the space for the government's

use. Much of the property could not be moved and was demolished. The expense incurred in preparing the property for the government's use was borne by the defendant. The use condemned was for a period of one year, out of an unexpired lease of approximately six years.[1]

Authority for the condemnation is contained in Title II of the Second War Powers Act of March 27, 1942, 56 Stat. 177, 50 U.S.C.A.Appendix, § 632, which provides: "The Secretary of War * * * may cause proceedings to be instituted * * * to acquire by condemnation, any real property, temporary use thereof, or other interest therein * * * that shall be deemed necessary, for military * * * or other war purposes * * *." The petition for condemnation, in conformity with the provision just quoted, described a designated number of square feet of floor space and prayed for an order "condemning the temporary use in the real property herein described" for a term of years ending June 30, 1943.

The case was tried to a jury and the government there, consistent with its position here, proceeded on the theory that such compensation was limited to the fair market rental value of the floor space condemned. The trial court apparently accepted this theory and submitted the cause to the jury on this basis. The defendant offered certain proof, admission of which was denied by the court, as to the expense and damages attributable solely to the operation of demolition and moving necessitated by the government's taking. We do not understand defendant to contend that it was entitled to recover these expenditures as such, but that proof of the same was admissible as an element of the fair value of the property taken. Thus the sole issue is whether the defendant was entitled to offer proof as to the expense so incurred as an element of "just compensation" guaranteed by the Fifth Amendment of the Constitution of the United States.

■ After studying the numerous authorities called to our attention, as well as others, we are convinced that the question for decision is a difficult one. There is a scarcity of authorities dealing with a same or similar situation. We are of the view that the opposing contentions arise largely because of a failure to recognize the exact nature of the property of which defendant was deprived. The government's case is predicated upon the basis that the property taken was merely the use of naked floor space, without any consideration to the fact that defendant was in possession of and was using said space in its business as a going concern. Consistent with this theory, it is contended by the government that the measure of defendant's compensation is only the fair rental value of such space in its naked form. In other words, according to the government's theory, and it was so argued before this court, the measure of compensation in a case of this character is the same whether the floor space taken be occupied or vacant. This theory, no doubt, is consistent with the use procured by the government, but not that which was taken from the defendant. In this connection, it must be kept in mind that it was defendant's use which was condemned and not merely a one-year part of· its term lease. This is so even though defendant's interest in the property stemmed from the lease. It may also be noted that defendant had something more than the right to use, as would be the case where the property of a lessee was unoccupied. Here, the right to use had been exercised and such right was merged in the actual and physical possession of the property. The pertinency of this discussion resides in the fact that compensation is to be measured by the condemnee's loss, that of which he is deprived, and not by the taker's gain, that which he acquires. United States ex rel. and for Use of T. V. A. v. Powelson, 319 U.S. 266, 281, 63 S.Ct. 1047, 87 L.Ed. 1390; United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 76, 33 S. Ct. 667, 57 L.Ed. 1063.

■ We agree with the lower court's characterization of the government's theory as "hard law." We go further and express the view that it should not be accepted in the absence of definite and controlling authority. The government cites many cases in support of principles usually

---

[1] Subsequent to the trial, an amendment to the petition for condemnation was filed which changed the one-year period condemned to that of a term for years expiring June 30, 1943, renewable for additional yearly periods thereafter during the existing national emergency, at the election of the Secretary of War. We do not understand, however, that this amended petition has any bearing upon the issues before the court below or here.

applicable in condemnation suits. None of them, however, are based upon the unusual facts of the instant case, with the possible exception of Gershon Bros. Co. v. United States, 5 Cir., 284 F. 849. It would unduly prolong our discussion to analyze and distinguish such cases. We shall refer to only a few of the more important. Much stress is placed upon the recent case of United States v. Miller et al., 317 U.S. 369, 63 S. Ct. 276. It is true the court in that case applied the generally accepted concept of market value. In doing so, however, it appears to have recognized cases requiring a different test. On page 373 of 317 U.S. page 280 of 63 S.Ct., the court stated:

"It is conceivable that an owner's indemnity should be measured in various ways depending upon the circumstances of each case and that no general formula should be used for the purpose."

The court also, on the same page of 317 U.S., on page 279 of 63 S.Ct., in discussing the "just compensation" clause of the Constitution, said:

"Such compensation means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken."

In support of this statement, a number of cases are cited in the footnote, including Seaboard Airline R. Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664, and United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014. In the latter case, the government requisitioned bituminous coal for use in the Navy. The court, in discussing just compensation, on page 345 of 262 U.S. on page 567 of 43 S.Ct., said:

"The owner was entitled to what it lost by the taking. That loss is measured by the money equivalent of the coal requisitioned. * * * The owner had a right to sell in that market (export market), and it is clear that it could have obtained the prices there prevailing for export coal. It was entitled to these prices."

In the Seaboard case, 261 U.S. at page 304, 43 S.Ct. at page 356, 67 L.Ed. 664, the court, in stating the same general rule, said it was based on "equitable principles" and added:

"He (condemnee) is entitled to the damages inflicted by the taking. Northern Pacific R. Co. v. North American Tel. Co., 8 Cir., 230 F. 347, 144 C.C.A. 489, L.R.A. 1916E, 572."

In the Northern Pacific case, the Telegraph Company sought to take from the Railway Company the right to use the latter's right of way for a telegraph line. The court, after determining that there was no market value for such lease or use of the Railway Company's right of way, on page 352 of 230 F., stated:

"Now, where real property about to be taken by condemnation has no market value, the amount of rent, or of income it has produced, and is producing, and is capable of producing, and the opinions of men who have had experience in dealing in it and have knowledge of its value, are competent and material evidence to determine what is just compensation for its taking; in other words, what damages will be inflicted by that taking?"

Other cases where the fair market value rule has been applied are those of Olson v. United States, 292 U.S. 246, 255, 54 S. Ct. 704, 78 L.Ed. 1236, and United States v. Meyer, 7 Cir., 113 F.2d 387, 397, both of which recognize that the condemnee is entitled to be put in as good position pecuniarily as if his property had not been taken. Cases are also cited wherein it has been held expenses incurred by an owner in moving his personal property or business from the premises condemned are not compensable. Joslin Mfg. Co. v. Providence, 262 U.S. 668, 675, 43 S.Ct. 684, 67 L.Ed. 1167; Potomac Elec. Power Co. v. United States, 66 App.D.C. 77, 83, 85 F.2d 243, 249; Futrovsky v. United States, 62 App. D.C. 235, 236, 66 F.2d 215, 216. All of these cases involved the condemnation of land and no doubt are authority for the government's position under a similar state of facts. In both the Potomac and Futrovsky cases, however, the rule was applied on the theory that the fixtures could be removed without substantial injury either to the real estate (the property taken) or to the fixtures.

Mitchell v. United States, 267 U.S. 341, 345, 45 S.Ct. 293, 69 L.Ed. 644, and Bothwell v. United States, 254 U.S. 231, 41 S. Ct. 74, 65 L.Ed. 238, are cited in support of the proposition that neither damages to nor complete destruction of a business conducted on the premises taken constitutes a taking of property. In each of these cases, it was land which was taken, and it was held that the damage to the business was

consequential to which the condemnee was not entitled. The court in the Mitchell case, however, stated, 267 U.S. at page 344, 45 S.Ct. at page 294, 69 L.Ed. 644:

"The special value of land due to its adaptability for use in a particular business is an element which the owner of land is entitled, under the Fifth Amendment, to have considered in determining the amount to be paid as the just compensation upon a taking by eminent domain."

The government cites a number of authorities in support of its theory that the rule of fair market value should be applied in ascertaining the value of a leasehold interest. We have examined such cases and think Gershon Bros. Co. v. United States, 5 Cir., 284 F. 849, is the only one which supports such theory. Admittedly, the facts of that case are quite similar to those here. Warehouse space held and occupied by the condemnee under a lease was requisitioned by the government. The plaintiff sought to recover, in addition to the fair rental value of the property taken, the alleged difference in rent between the premises vacated and those into which plaintiff moved, the amount of expense of moving plaintiff's stock from one warehouse to the other, and for other incidental expense incurred in moving. The court (284 F. at page 850) held:

"The 'just compensation' to which the plaintiff was entitled is measured by the market value of its property taken. It was not entitled to more than that, because its expenses were increased in consequence of moving its business to another place."

In our view, this statement is unsound for the reason that it fails to take into account the nature of the property of which the condemnee was deprived. Evidently the court treated the property taken as merely a lease, or at any rate, the right of use in unoccupied property. So far as the facts are disclosed by the opinion, the property taken from the condemnee, however, was the actual use and possession as distinguished from a right to use.

The Federal cases relied upon by the defendant are little, if any, more helpful than those relied upon by the government. Its strongest point perhaps lies in the general principle stated in the Miller and other cases, supra, to the effect that the condemnee is to be put in as good position pecuniarily as he would have occupied if his property had not been taken. A number of cases are cited, however, wherein the cost of removing personal property has been allowed, either as a measure of compensation or as an element thereof. Among such cases are National Laboratory & Supply Co. v. United States, D.C., 275 F. 218; United States v. Wiener, 2 Cir., 210 F. 832; Chicago, M. & St. P. R. Co. v. Hock, 118 Ill. 587, 9 N.E. 205; Metropolitan West Side El. R. Co. v. Siegel, 161 Ill. 638, 44 N.E. 276; McMillin Printing Co. v. Pittsburgh, C. & W. R. Co., 216 Pa. 504, 65 A. 1091; and Des Moines Wet Wash Laundry v. Des Moines, 197 Iowa 1082, 198 N.W. 486, 34 A.L.R. 1517. It is true, as the government points out in the National Laboratory case, the court merely followed the measure of damages invoked by the parties. The Wiener case has little relevancy to the instant question, but, strange as it may seem, the government there urged that the only damage to the owners of the plant condemned was the expense of taking the machinery down, removing it and setting it up in a new location. We realize, in view of what was said in the Miller case, supra, 317 U.S. at page 379, 63 S.Ct. at page 283, that State court decisions are not controlling, but in the absence of a more definite Federal rule applicable to the instant situation, we think they are worth noting.

In the Hock case, 118 Ill. at page 590, 9 N.E. at page 206, the court stated:

"The inconvenience and cost of removal of the business from the premises condemned, are mentioned as elements of damages proper for consideration. This, however, is in harmony with the ruling in St. Louis, Vandalia & Terre Haute Railroad Company v. Capps, 67 Ill. 607."

In the Siegel case, 161 Ill. at page 648, 44 N.E. at page 280, the same court said:

"If * * * the loss and expense of removal enter into and help to make up the market value when the sale is voluntary, we see no reason why the same elements should not help to make up the market value when the sale is compulsory."

The government contends that these cases have been discredited by a later decision of the same court in Braun v. Metropolitan West Side El. R. Co., 166 Ill. 434, 46 N.E. 974. This characterization is hardly accurate. True, the court in the latter case pointed out that its previous decisions in the Hock and Siegel cases were the result of the theory on which the

cases were tried in the courts below. The court, however, after stating the fair market rule, recognizes exceptions thereto by stating (166 Ill. at page 438, 46 N.E. at page 976):

"* * * and, whenever a consideration of matters of personal inconvenience to the owner, loss of profits, damage to personal property, and cost of removal is permissible, it must be when a sufficient foundation therefor has been laid, so that their consideration simply aids the jury and court in determining the fair cash value of the property, in view of its present use. There is nothing in this case to bring it within any exception to the general rule."

In that case, only a part of a tract of land was condemned and the court thought there was no showing that the condemnee's business could not be conducted upon that portion not taken, and for this reason the exception to the general rule could not be given effect.

Of the cases cited by the defendant, the .McMillin case is the nearest in point. After stating the general fair market rule, the court said (page 1094 of 65 A.):

"But market value is an unsatisfactory test of the value to a tenant of a leasehold interest. It is really no test at all because a lease rarely has any market value. Generally it is not assignable at the will of the tenant, and he pays in rent all that the right of occupation is worth. The right of which he is deprived, and for which he is entitled to full compensation, is the right to remain in undisturbed possession to the end of the term. The loss resulting from the deprivation of this right is what he is entitled to recover. The value of the right he is forced to sell cannot ordinarily be measured by its market price, for there is no market for it; nor can it always be measured by the difference between the rent reserved and the rental value, if the lease should be a favorable one. If, as was the case here, a tenant, engaged in a business requiring the use of heavy machinery and appliances, should secure a new place equally well adapted to his business, and at the same rent, he would still be at the expense of removal and at a loss because of the stoppage of his business. These are matters to be considered in connection with others, not as substantive elements of damage, but as tending to prove the value of the leasehold interest."

Again, as pointed out by the government, this case was tried in the court below on the theory that the cost of removing machinery should be allowed. The government also suggests that the McMillin case is of doubtful validity due to a later decision of the same court, Iron City Automobile Co. v. Pittsburgh, 253 Pa. 478, 98 A. 679, L.R.A.1917C, 420. We do not so read this latter case; in fact, the court appears to have reaffirmed the McMillin case. On page 681 of 98 A., the court, in discussing the McMillin case, stated:

"* * * the tenant was allowed to recover the expenses of the compulsory removal of machinery We did not, however, permit this as a separate 'item' of damage, but merely as 'a proper element' to be considered in fixing the value of th↙ leasehold. In other words, our underlying thought appears to have been: If a purchaser had appeared upon the scene to take over the lease, the fact that the holder thereof would be obliged to remove the business with the machinery to another location would, of course, cause the prospective lessee to diminish his bid for the balance of the term accordingly; hence the cost of removal and the depreciation in value of the machinery were proper elements for consideration and deduction in measuring the value of the lease."

It is pertinent to observe that the unfairness of applying the fair market rule in the instant case is even more apparent than in the McMillin case, for the reason that the use condemned here is only for one year out of a lease which had five years more to run, while there the entire lease was taken.

Another case based on facts similar to those of the instant case is that of Des Moines Wet Wash Laundry v. Des Moines, 197 Iowa 1082, 198 N.W. 486, 34 A.L.R. 1517. In discussing the question, the court said (page 488 of 198 N.W.):

"The real right of which plaintiff is deprived in the exercise of eminent domain by the defendant, and for which, under the Constitution of the state, he is entitled to be compensated, is the right to remain in undisturbed possession and enjoyment to the end of the term.

"'The loss resulting from the deprivation of this right is what he is entitled to recover. The value of the right he is forced to sell cannot ordinarily be measured by its market price, for there is no

market for it; nor can it always be measured by the difference between the rent reserved and the rental value, if the lease should be a favorable one. If, as was the case here, a tenant, engaged in a business requiring the use of heavy machinery and appliances, should secure a new place equally well adapted to his business, and at the same rent, he would still be at the expense of removal and at a loss because of the stoppage of his business. These are matters to be considered in connection with others, not as substantive elements of damage, but as tending to prove the value of the leasehold interest.'"

A pertinent observation is found in United States v. Becktold Co., 8 Cir., 129 F.2d 473, 476, where the court quoted from a New York Court of Appeals case written by Judge Cardozo, as follows:

"'Condemnation' is an enforced sale, and the state stands toward the owner as buyer toward seller. On that basis the rights and duties of each must be determined. It is intolerable that the state, after condemning a factory or warehouse, should surrender to the owner a stock of secondhand machinery and in so doing discharge the full measure of its duty."

Phelps v. United States, 274 U.S. 341, 47 S.Ct. 611, 612, 71 L.Ed. 1083, is also worth noting, not so much because of what was decided as the proof which was considered in determining just compensation. There, the property condemned was the use of a pier in New York harbor held by the condemnee under a lease. The Supreme Court opinion discloses that the condemnee continued to pay rent to its lessor in the amount of $79,890.42, which was repaid to the condemnee by the United States. The condemnee, in addition, was allowed so much per month for the use of its property, in the amount of $254,175.79 over the amount of rent actually paid. The only question before the Supreme Court was whether the condemnee was entitled to interest from the time of taking or from the time of payment. The court decided it was from the time of taking, on the theory that the condemnee was "entitled to have the full equivalent of the value of such use at the time of the taking paid contemporaneously." This case went to the Supreme Court from the Court of Claims. Howard Phelps et al., 61 Ct.Cl. 1044. The facts regarding the case, however, and the basis for that court's decision are found in Booth & Co. v. United States, 61 Ct.Cl. 805. The findings describe the property taken, the terms and conditions of the lease, including the amount of rental the lessee (condemnee) was obliged to pay, the size of the pier and its facilities for accommodating ships. The findings also disclose the amount received by the condemnee from steamship companies for the use of the pier prior to the taking, as well as the amount received during the remainder of the year after the property was returned by the government to the owner. It was, therefore, upon the basis of the condemnee's income, both prior to the taking and after the property had been returned, that the fair value of the use taken was fixed and determined. The Court of Claims approved the award as thus determined although, as stated, its propriety was not raised in the Supreme Court. The significant thing about these facts, so we think, is that the property taken was recognized by the government as the condemnee's use and its occupancy in the conduct of its business, and it was that use, as distinguished from a mere interest in the lease, for which compensation was awarded. No contention was made that just compensation should be limited to the fair rental value of the space condemned.

█ While we recognize that the question for decision is not free from doubt, we are of the view that fair rental value of the unoccupied space taken was not the equivalent of "just compensation," to which defendant was entitled. To so hold is to ignore that which was taken from the defendant, its use and occupancy of the premises. Suppose the defendant and the government had entered into a lease voluntarily. Certainly, the cost of preparing the space for the government's use would have been a material item in the amount of rent agreed upon. If that cost had been borne by the defendant, the government no doubt would have been willing to pay more rental, and if it had been borne by the government, defendant for the same reason would have been willing to accept less. We are unable to perceive why such cost should not also be taken into consideration where the acquisition is the result of condemnation. While we think that the fair market rental value of the unoccupied space was properly admissible as an element of such compensation, to hold that the defendant was entitled to nothing more is to hold that it was merely entitled to be relieved of the rental

obligation owed to its lessor. This plainly ignores that which was taken from the defendant and is inequitable as well as unjust.

We, therefore, reach the conclusion that the defendant was entitled to prove, as an element of "just compensation," the actual and necessary expense directly incurred in vacating the property condemned. It follows that defendant's offer of proof in this respect was erroneously excluded, and that the judgment must be and is hereby reversed.

MINTON, Circuit Judge (dissenting).

I cannot agree that the Government should be liable for the moving expense of the appellant. Dress this question up as you will, that is all that it amounts to.

That this case may be properly classified as one of "hard law" is no justification for departing from the true objective of a condemnation suit, namely, to fix the fair market value of the property taken.

In the case before us, there was a going business, operating at a place, the warehouse. The Government took, for a time, the place, and not the business. The removal of the business was an expense that was consequential and was not an element of value of the warehouse taken.

I have never understood that the condemnor could be held liable for expense which the condemnee was put to in vacating the premises. The cases are against such an allowance. Gershon Bros. Co. v. United States, 5 Cir., 284 F. 849; City of St. Louis v. St. Louis, I. M. & S. R. Co., 266 Mo. 694, 182 S.W. 750, L.R.A.1916D, 713; Matter of New York, W. S. & B. Ry. Co., 35 Hun, N.Y., 633; Mayor & City Council of Baltimore v. Gamse & Bro., 132 Md. 290, 104 A. 429; Ranlet v. Concord Railroad Corp., 62 N.H. 561.

Let us suppose that the Government had in this case condemned the fee. It would have been liable to pay the fair market value of the fee taken. Would the Government have had to pay the appellant's moving expense? The majority concedes that it would not. With this, I agree. The cases support this view. Joslin Mfg. Co. v. City of Providence, 262 U.S. 668, 675, 43 S.Ct. 684, 67 L.Ed. 1167; Potomac Electric Power Co. v. United States, 66 App.D.C. 77, 83, 85 F.2d 243, 249; Futrovsky v. United States, 62 App.D.C. 235, 236, 66 F.2d 215, 217. By what process of rea-

soning can it be said that the Government must pay that expense if it takes less than the fee?

The Government did not take the bins and other personal property which the appellant removed. That they might have been worth less after removal than when installed and that certain expense was incurred in their removal are no criteria of the value of the thing taken, namely, the warehouse space.

The Government is required to make the condemnee whole for the property taken, but not for the expense of getting out. The use to which property is being put, or could be put, is a proper consideration for court or jury in arriving at the market value, but such use is not the thing taken. The taking may interrupt the business conducted on the premises, but that does not add to or detract from the value of the thing used. It is the thing used, namely, the warehouse space, that was taken, and not the use of the thing, namely, the business conducted in the warehouse. We seek the value of the thing used, not the value of the use of the thing. The expense of relinquishing the use of the thing from the thing used is not compensable as an element of value of the thing taken.

The judgment should be affirmed.