## UNITED STATES v. WESTINGHOUSE ELECTRIC & MFG. CO.

### No. 4353.

United States Court of Appeals First Circuit.

Nov. 23, 1948.

MAGRUDER, Chief Judge, dissenting.

———◆———

John F. Cotter, Atty., Department of Justice, of Washington, D. C. (A. Devitt Vanech, Asst. Atty. Gen., and William T. McCarthy, U. S. Atty., of Boston, Mass., on the brief), for appellant.

Milton J. Donovan, of Springfield, Mass., for appellee.

Before MAGRUDER, Chief Judge and GOODRICH and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal by the United States from so much of a final judgment entered in proceedings brought for the condemnation of the temporary use and occupancy of a parcel of land with the buildings thereon as awarded removal costs in the stipulated amount of $25,600 to Westinghouse Electric and Manufacturing Company, the lessee of a portion of the premises condemned. The question presented here was not directly considered by the Supreme Court in either United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390, or in United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729. It is whether costs of removal may properly be considered as elements of a lessee's damage when the United States condemns the use and occupancy of leased premises for an original period less than the remainder of the lessee's term but with options to extend, and then exercises those options to prolong its use and occupancy beyond the lessee's term. The facts which give rise to this question have been stipulated.

On February 18, 1943, the United States filed a petition in the court below under the Second War Powers Act of March 27, 1942, 56 Stat. 176, 177, 50 U.S.C.A.Appendix, § 631 et seq., and other statutes, for the condemnation of certain warehouse property in Springfield, Massachusetts, part of which was occupied at the time by the Westinghouse Electric and Manufacturing Company under a lease expiring on October 30, 1944. The petition for condemnation recited "That the interest to be acquired is a term for years ending June 30, 1943, subject to existing easements * * *, said term being renewable for additional yearly periods during the existing national emergency at the election of the Secretary of War, which election shall be signified by the giving of notice at any time prior to the expiration of the term hereby taken or subsequent extensions thereof." The United States was granted immediate possession of the premises and Westinghouse moved to another location. The parties have stipulated that Westinghouse "in so doing incurred certain costs and expenses of removal of its personal property aggregating the sum of Twenty Five Thousand, Six Hundred and 00/100 Dollars ($25,-600.00) which it is agreed represents the full and complete claim for compensation of said lessee against the United States of America on behalf of, or arising under the lease of the Westinghouse Electric Corporation." It is further stipulated that had the parties proceeded to trial witnesses for

Westinghouse would testify that the above amount was actually expended by it "for the cost and expenses of labor, material, and transportation in moving its property from the location in question to a new location", and that the expense incurred was necessary, fair and reasonable "for such removal."

On May 1, 1943, the Secretary of War exercised the right to renew the term of the taking to June 30, 1944, and on May 25, 1944, he exercised the right to renew the term to June 30, 1945, thereby extending the Government's occupation eight months beyond the expiration date of the Westinghouse lease. The United States deposited estimated just compensation for the original taking and for each extension thereof in the gross amount of $121,045.78. It is stipulated that this amount "represents the fair market rental value of the bare unheated warehouse space taken and, if upon the facts and evidence agreed, if admissible, Westinghouse Electric Corporation is entitled to recover for the loss of its right to occupy under its lease as a matter of law, then a finding should be entered determining the just compensation to be in the sum of One Hundred Forty-Six Thousand, Six Hundred Forty-Five and 78/100 Dollars ($146,645.78), inclusive of interest, and an order be entered disbursing the sum of Twenty-Five Thousand, Six Hundred and 00/100 Dollars ($25,600.00) to Westinghouse Electric Corporation, and the sum of One Hundred Twenty-One Thousand, Forty-Five and 78/100 Dollars ($121,045.78), being the total amount of the deposits," to Westinghouse's lessor, the owner in fee.

It is further stipulated that no "factual matters" other than those agreed upon remain to be determined and that "the sole issue of law" which they present is whether Westinghouse is "entitled to recover from the United States of America the sum of Twenty-Five Thousand, Six Hundred and 00/100 Dollars ($25,600.00) as the value of its occupancy under the lease upon the foregoing facts and evidence?" The District Court, considering the General Motors Corp. case supra, controlling, entered judgment for Westinghouse in accordance with the stipulation and the United States thereupon took this appeal.

In the General Motors Corp. case the question considered by both the Circuit Court of Appeals [1] and the Supreme Court was whether the District Court had erred in excluding evidence of a lessee's costs of removal at the trial by jury of the issue of the amount of the lessee's just compensation in a condemnation case wherein the use condemned was for a period of one year and no more out of a lease having approximately six more years to run. Both courts answered this question in the affirmative, holding that under the circumstances presented actual, necessary and unreasonable costs of removal might be proved by a lessee, not as independent items of damage, but as elements to be considered in determining the amount of the just compensation required by the Fifth Amendment, i. e. the price which would be willingly asked and paid for the temporary interest which the Government had condemned.

In reaching this result the Supreme Court was careful to point out that it approved, and was not to be taken as departing from, the general rule that consequential losses are [323 U.S. 373, 65 S.Ct. 360] "not to be reckoned as part of the compensation" due an owner when the fee is taken. It said the question posed in the case before it was "shall a different measure of compensation apply where that which is taken is a right of temporary occupancy of a building equipped for the condemnee's business, filled with his commodities, and presumably to be reoccupied and used, as before, to the end of the lease term on the termination of the Government's use?" Id. 323 U.S. at pages 379, 380, 65 S.Ct. at page 360, 89 L.Ed. 311, 156 A.L.R. 390.

In answering this question in the affirmative the Supreme Court first pointed out that whenever the Government takes an owner's property "that is, the fee, the lease, whatever he may own, terminating altogether his interest, under the established law it must pay him for what is taken, not more; and he must stand whatever indirect or remote injuries are properly comprehended within the meaning of 'conse-

quential damage' as that conception has been defined in such cases." But the court goes on to say that "It is altogether another matter when the Government does not take his entire interest, but by the form of its proceeding chops it into bits, of which it takes only what it wants, however few or minute, and leaves him holding the remainder, which may then be altogether useless to him, refusing to pay more than the 'market rental value' for the use of the chips so cut off. This is neither the 'taking' nor the 'just compensation' the Fifth Amendment contemplates. The value of such an occupancy is to be ascertained, not by treating what is taken as an empty warehouse to be leased for a long term, but what would be the market rental value of such a building on a lease by the long-term tenant to the temporary occupier. The case should be retried on this principle." Id. 323 U.S. at page 382, 65 S.Ct. at page 361, 89 L.Ed. 311, 156 A.L.R. 390. Following this the court says that "Some of the elements which would certainly and directly affect the market price agreed upon by a tenant and a sublessee in such an extraordinary and unusual transaction would be the reasonable cost of moving out the property stored and preparing the space for occupancy by the subtenant," and consequently the court reaches its conclusion that "Such items may be proved, not as independent items of damage but to aid in the determination of what would be the usual— the market—price which would be asked and paid for such temporary occupancy of the building then in use under a long term lease."

From the foregoing it seems evident that the Supreme Court based its conclusion in the General Motors Corp. case primarily, if not entirely, upon the fact that since the use condemned by the Government was for a period of only one year out of an unexpired lease of approximately six years, the ousted tenant was under the obligation of returning to, or at least was responsible for the rent for, the leased premises for the balance of the term of the lease remaining after the termination of the Government's use.

But in the General Motors Corp. case both the Circuit Court of Appeals and the Supreme Court adverted in footnotes to the fact that subsequent to the entry of the judgment appealed from, the District Court on the Government's motion had opened the judgment and allowed the Government to amend its petition for condemnation to enlarge the interest taken by making the original term for years expiring on a given date "renewable for additional yearly periods thereafter * * * at the election of the Secretary of War" on the giving of a specified notice of intent to renew, and then had entered a new judgment in the amount of the verdict and had continued its jurisdiction for the ascertainment of further compensation for damage to the property, if any such damage should accrue. Thus, although the Supreme Court said that the amendment of the complaint in the above case did not alter the question the case presented, nevertheless it must have been well aware of the fact that in ordering the case retried on the principles which it was announcing, it was ordering the admission of evidence of a tenant's removal costs at the trial of a petition for condemnation which by amendment had become similar to the one in the case at bar with respect to the description of the interest taken, i. e., at the trial of a condemnation case in which the use taken by the Government, if renewed, might outlast the lessee's tenancy. From this we can only assume that the Supreme Court intended its decision in the General Motors Corp. case to rule the situation presented in the instant one.

Further confirmation for this view is to be found in the footnote in the above case already alluded to in which the Supreme Court refers to the amendment of the judgment appealed from. For, after saying that the amendment did not "alter the question" before it, and that "The case now presented involves only the original taking for one year", the court immediately goes on to say: "If, on remand, the case be treated as involving the Government's option of renewal, the additional value of that interest must be included in the compensation awarded."

And we find nothing militating against this view in the opinion of the court in the Petty Motor Co. case, supra. Indeed we

find support for it in the concurring opinion in that case.

In the Petty Motor Co. case the Supreme Court was confronted with the question of the admissibility of evidence of a lessee's costs of removal at the trial of a petition for condemnation whereby the Government had taken the use of certain premises through June 30, 1945, with the right to surrender them on either June 30, 1943, or June 30, 1944, upon giving the owner sixty days written notice, the first of these surrender dates being within the term of an outstanding lease of the premises and the second within the term of an option of renewal contained in the lease. In this situation the Supreme Court held that the rule it had announced in the General Motors Corp. case did not apply. It said that "Although an earlier surrender might occur by the election of the United States, the estate sought did not necessarily expire until June 30, 1945." 327 U.S. at page 374, 66 S.Ct. at page 598, 90 L.Ed. 729. This, it concluded "resulted in the taking by the United States of the temporary use of the building until June 30, 1945," for, it continued, "When the shortening of the term is wholly at the election of the lessee, the term of the leasehold for the purpose of determining the extent of the taking must be considered to be its longest limit." 327 U.S. at page 375, 66 S.Ct. at page 598, 90 L.Ed. 729. Therefore it concluded that there had been "a complete taking of the entire interest of the tenants in the property" and then it said: "We think the sounder rule under the federal statutes is to treat the condemnation of all interests in a leasehold like the condemnation of all interests in the fee. In neither situation should evidence of the cost of removal or relocation be admitted. Such costs are apart from the value of the thing taken. They are personal to the lessee."

Then the court distinguished the General Motors Corp. case on the ground that "In it only a portion of the lease was taken," and, it continued "There is a fundamental difference between the taking of a part of a lease and the taking of the whole lease. That difference is that the lessee must return to the leasehold at the end of the Government's use or at least the responsibility for the period of the lease, which is not taken, rests upon the lessee. This was brought out in the General Motors [Corp.] decision. Because of that continuing obligation in all takings of temporary occupancy of leaseholds, the value of the rights of the lessees, which are taken, may be affected by evidence of the cost of temporary removal."

Taken together the two cases we have discussed and quoted from clearly establish that although a tenant's removal costs may never be proved "as independent items of damage", they must be considered "to aid in the determination" of the amount of the just compensation which the Government under the Fifth Amendment must pay to a tenant when a part only of his leasehold interest is taken but are not to be considered when his entire interest is expropriated. The problem before us is to determine whether the Government in the case at bar took the tenant's entire interest or only a part of it. We have concluded that only part of the interest had been taken and thus we agree with the District Court that the rule of the General Motors Corp. case applies.

And Mr. Justice Rutledge concurring in the Petty Motor Co. case takes the same view. After pointing out that in the General Motors Corp. case "the Court applied a rule of compensation to the case of carving out a temporary or short-term use from a longer term very different from that generally applicable when the owner's entire interest is taken," and that "The purpose and the basis for this were to give substance, in practical effect, to the Amendment's explicit mandate for payment of 'just compensation' in cases of such extraordinary 'takings' and to prevent those words from being whittled down by legalistic construction into means for practical confiscation," he expresses doubts, but accepts, the Court's construction that in the Petty Motor Co. case the Government condemned the tenant's "entire leasehold interest in the premises and therefore must pay the full value of that term according to the usual rules in such cases". Then he discusses the rule of the General Motors Corp. case and the rule adopted by the court in the Petty Motor Co. case, and referring to the Government's option to surrender in the latter case continues as follows:

"It is this option which I think makes dubious the ruling that all of the Petty Motor Company's interest was 'taken'. In my opinion it was only 'taken' contingently. For, if the option is valid, quite obviously the Government was free to surrender, by giving notice, on June 30, 1943, in which event Petty's lease would have been in force until the following October 31 in any event, or on June 30, 1944, in which case Petty's lease might have continued in force until October 31, 1944. In either event the case would have fallen squarely within the General Motors [Corp.] situation and ruling.

"In my opinion that ruling and the requirement of paying compensation according to the measure it prescribes apply whether the Government carves out part of the tenant-owner's term by one method of stating what it takes or another. That is, for this purpose, it makes no difference whether the Government 'takes' the temporary use for part of the term but adds to this a right of renewal periodically which if exercised will extend the term taken beyond the term of the lease; or, on the other hand, purports to take a term which extends beyond that of the leasehold interest, but reserves the right to cut this down periodically so that in fact it may surrender the premises before the leasehold expires and thus carve out of it a shorter term, just as in the General Motors [Corp., supra] taking.

"Whether the chopping up is accomplished one way or the other, the effects for the owner are the same, the 'taking' is in substance the same, and the compensation is required, under the General Motors [Corp.] decision, to be the same. That ruling cannot be avoided by inverting the length of the term specified and, correlatively, the character of the option added. Nor can it be avoided by construing the term taken in view of the contingent option, in cases of the Petty type as including all of the interest of the lessee, if in fact the Government exercises the option and surrenders the premises before the lessee's term expires. Upon such a showing the General Motors [Corp.] rule would apply and the owner-lessee would be entitled to recover compensation including all of the elements specified in that rule, subject only to making proof of them."

The foregoing analysis seems to us to indicate that the rule of the General Motors Corp. case applies when the Government has described the interest which it is taking as a term for years annually renewable at its option. In applying it, however, we recognize that the way is now open for the Government to avoid any possibility of liability for removal costs by the simple expedient of "chopping up" the tenant's interest as it did in the Petty Motor Co. case rather than as it did in the General Motors Corp. case. Perhaps, since in all cases wherein the Government takes a temporary use for an indefinite period the district court having jurisdiction must of necessity retain its jurisdiction until the actual termination of the Government's use in order finally to determine the whole amount of damage incurred, the problem could be solved by directing the district courts to hold the question of removal costs as elements of a tenant's damage in abeyance until final judgment so that they could be considered or disregarded depending upon whether in fact the Government's use did or did not outlast the tenant's lease. But we find no sanction for this procedure in either of the Supreme Court cases considered, and this omission we think highly significant.

The judgment of the District Court is affirmed.

MAGRUDER, Chief Judge (dissenting).

The teaching of United States v. General Motors Corp., 1945, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390, and United States v. Petty Motor Co., 1946, 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729, may perhaps not be entirely clear. But it seems to me that the logical inference from those decisions points to the opposite conclusion from that arrived at in the opinion of the court in the case at bar.

Where the United States takes the entire fee in condemnation proceedings, the settled rule as to just compensation for the interest taken is stated in the General Motors Corp. case as follows, 323 U.S. at

pages 379, 380, 65 S.Ct. at page 360, 89 L. Ed. 311, 156 A.L.R. 390:

"The sovereign ordinarily takes the fee. The rule in such a case is that compensation for that interest does not include future loss of profits, the expense of moving removable fixtures and personal property from the premises, the loss of good-will which inheres in the location of the land, or other like consequential losses which would ensue the sale of the property to someone other than the sovereign. No doubt all these elements would be considered by an owner in determining whether, and at what price, to sell. No doubt, therefore, if the owner is to be made whole for the loss consequent on the sovereign's seizure of his property, these elements should properly be considered. But the courts have generally held that they are not to be reckoned as part of the compensation for the fee taken by the Government. We are not to be taken as departing from the rule they have laid down, which we think sound."

Likewise, where the taking is of a term for years which completely extinguishes an existing leasehold interest, it is error to admit evidence by the tenant of his costs of moving and reinstallation of equipment on the issue as to the amount of compensation payable to him. United States v. Petty Motor Co., supra. In such a case the measure of compensation is the value of the use and occupancy of the leasehold for the remainder of the tenant's term, less the amount of the rent which the tenant agreed to pay for such use and occupancy. 327 U.S. 372, at page 381, 66 S.Ct. 596, 90 L.Ed. 729.

An exceptional situation is presented where the Government takes a term for years for a period less than the unexpired portion of an existing leasehold. As to the appropriateness here of receiving evidence of the tenant's removal expenses, the tenant in its brief in the General Motors Corp. case urged upon the Supreme Court this equitable consideration: "As the situation in this case actually stands, however, the condemnation for the temporary use of only one year means that, instead of moving out once and for all, in 1942 rather than six years later, respondent is obliged, by force of its obligation for the balance of the lease term, to move back again in order to re-occupy the property upon termination of the Government's temporary use, and then move out again several years later by reason of the expiration of the lease." That this seems definitely to have been the moving consideration in the General Motors Corp. decision appears from the explanation of that case in United States v. Petty Motor Co., 327 U.S. 372, at pages 379, 380, 66 S.Ct. 596, 90 L.Ed. 729.

In the present case the United States filed a single petition for condemnation describing the interest to be acquired as a term for years ending June 30, 1943, said term being renewable upon notice for additional yearly periods during the existing national emergency at the election of the Secretary of War. Of necessity, in such a condemnation proceeding, the final determination of the just compensation must abide the event, because until it is known whether and to what extent the Government's option to renew is to be exercised, the extent of the ultimate taking under the condemnation petition cannot be known. Here, before the court below entered the judgment now under review, the United States by exercise of its option of renewal had extended the term of the taking beyond the remaining period of Westinghouse's lease. It thus conclusively appeared that Westinghouse would not have the burden of moving out during the period of the Government's temporary occupancy and then moving back for the balance of the term of its leasehold—which, as we have seen, was the important factor in the General Motors Corp. case. Therefore it seems to me that, at the time the district court gave judgment here, the case stood just as if the Government had originally taken a term for a period expiring June 30, 1945, which was longer than the unexpired portion of Westinghouse's lease. United States v. Petty Motor Co., supra, is authority for the point that in such a case evidence of the tenant's removal costs is inadmissible on the issue of the value of the tenant's leasehold interest extinguished by the taking.

In the General Motors Corp. case, the original petition for condemnation was for

a term of a year only. The case was tried on this basis in the district court, and evidence of the tenant's removal expenses was excluded. The case was argued in the circuit court of appeals and in the Supreme Court on the same basis, and both appellate courts held that the trial court was in error in excluding evidence of removal costs. The case therefore had to go back for a new trial. It is true, as both appellate courts noted, that after the district court had entered judgment on the verdict it allowed the Government to amend its petition for condemnation so as to add an option of renewal for additional yearly periods at the election of the Secretary of War. But it does not appear from the record, in the General Motors Corp. case whether the Government ever exercised its option to extend the term beyond the one year originally taken. For all we know, it never did; and if that is what happened, then the district court upon the retrial would have been obliged to receive evidence of the tenant's costs of removal as directed by the Supreme Court. But if, after the remand, it should have appeared that the Government had exercised its option of renewal and was still in possession, I suppose the issue of compensation to General Motors would have stood in abeyance until it was determined whether the United States was going to stay in possession beyond the remaining portion of General Motors' lease. And if the fact was at the time of the retrial that the taking by the United States had completely extinguished the leasehold interest of General Motors, then the decision in United States v. General Motors Corp., supra, as to admissibility of evidence of removal costs, was no longer controlling, for it was directed to quite a different situation. Cf. Rutledge, J., concurring, in United States v. Petty Motor Co., supra.

One further consideration is puzzling to me. Where the United States condemns a term for a period less than the unexpired portion of an existing leasehold, the decision in the General Motors Corp. case does not say that the tenant is entitled to removal expenses as an independent item of damage, but only that evidence of such removal expenses is admissible "to aid in the determination of what would be the usual—the

market—price which would be asked and paid for such temporary occupancy of the building then in use under a long term lease." 323 U.S. at page 383, 65 S.Ct. at page 362, 89 L.Ed 311, 156 A.L.R. 390. How much this factor might affect such market value is somewhat conjectural, but presumably it would be taken into account by an expert appraisal. When the United States takes, not a fixed term merely, but a term of a year with the option of renewal for successive annual terms, the tenant cannot know at the time of the original taking whether the condemnation proceeding will ultimately extinguish the whole of his unexpired leasehold, or whether he will be faced with the situation of the tenant in the General Motors Corp., case, namely, the taking of only a portion of the leasehold interest, putting the tenant to the necessity of moving out during the temporary period of Government occupancy and moving back for the remaining period of the leasehold after the Government has relinquished possession. Therefore, it might be suggested that, in the case at bar, the matter should be looked at as of the time of the original taking; that the *chance* of having to move back would be a factor bearing on the rental which a willing sublessor and a willing sublessee would agree upon for a sublease of this indefinite duration; and hence that evidence of removal costs should be admissible on the issue of just compensation for the interest taken, regardless of whether the Government, by successive renewals, ultimately extinguishes the whole interest of the tenant. But this suggestion runs counter to what was actually done in United States v. Petty Motor Co., supra. In that case the Government's petition for condemnation was for a term of years expiring June 30, 1945, reserving to the Government the right of election to surrender possession on June 30, 1943, or June 30, 1944, upon giving sixty days' written notice. At the time of the taking, Petty Motor Company held a lease on the premises expiring October 31, 1943, with an option for an additional year. At the time of the original taking, therefore, the tenant could not know whether the Government was going to occupy the premises for the full unexpired period of the tenant's lease, or whether the

Government by exercise of its surrender option was going to relinquish possession while a portion of the tenant's leasehold was still unexpired. It does not appear what the Government ultimately did in that respect. Nevertheless, the Supreme Court held that it was error for the trial court to receive evidence of the tenant's costs of moving and reinstallation of equipment on the issue of the value of the interest taken.

I think it is fair to say that neither my brethren nor I have complete confidence that we have drawn the correct inferences from the General Motors Corp. and Petty Motor Co. cases in aid of the contrary conclusions we have reached in our respective opinions. For that reason, it would not be unwelcome if the Supreme Court found an early occasion to review the whole matter.