# James McMillin Printing Company *v.* Pittsburg, Carnegie & Western Railroad Company, Appellant.

*Railroads—Eminent domain—Leasehold estate—Extension of lease—Damages—Measure of damages—Evidence.*

Where a railroad company attempts to condemn a building under the right of eminent domain without municipal consent, and, before such consent is obtained, a lease of a part of the building is extended, the company will be liable to make compensation to the tenant for the term as extended, and not merely for the original term.

In an action by a tenant whose leasehold interest has been taken under the right of eminent domain, the railroad company cannot complain that the tenant was permitted to recover the cost of removing machinery as a separate item in addition to the value of the lease, where the case was tried by both sides on the theory that there could be such a recovery.

Where a building is condemned by a railroad company, the cost to a tenant of removing machinery may be considered not as a substantive element of damage, but as bearing upon the value of the leasehold interest.

Argued Oct. 25, 1906. Appeal, No. 80, Oct. T., 1906, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1904, No. 140, on verdict for plaintiff in case of James McMillin Printing Company v. Pittsburg, Carnegie & Western Railroad Company. Before Mitchell, C. J., Fell, Brown, Mestrezat, Elkin and Stewart, JJ. Affirmed.

Appeal from report of jury of view. Before Kennedy, P. J.

The court charged in part as follows:

[If they are entitled to recover here, they are entitled, as I have already intimated to you, to recover the value of that lease, its fair market value, at the time it was appropriated by the railroad company. They are entitled, in addition to that, to the actual expenses necessarily incurred through this enforced removal from one place to another. The first item of damages is this matter of the expenses of the enforced removal. They are entitled under that item for the actual expenses necessarily incurred, as I have already stated, in removing from one building to the other. You have the figures making up the different items of expenses, making the total amount some $1,600. You have heard the various items making up that amount, and you have heard the objections

or answers to some of them.  You will consider the testimony with reference to all the items going to make up that amount claimed here, and for such expenses as you believe or find the plaintiff company actually incurred in that enforced removal, for that amount you will allow them compensation by your verdict.] [6]

[Now, one item is the difference in the rent they had to pay for the new premises, more than they paid for the old. That item is not submitted to you, and it is not claimed they are entitled to that as a matter of damages, but the difference is submitted here as showing that the lease was of material value.  You are to ascertain from all the testimony, if you can, what this lease was worth, what it was actually worth, what was its market value, and you will consider all the circumstances with reference to the lease and the premises there, and the occupation of them, and if you can find out, from this testimony, what that lease was actually worth in dollars and cents, for such amount you will allow the plaintiff, in addition to the cost of removal.

There is no question in regard to the cost of removal from one place to the other, as I have already told you.  They are to be allowed for that, and your verdict must be for that amount in any event.  But this question of the value of the lease is submitted for your serious consideration, and all the testimony in regard to it.  .I have mentioned one item, the loss of the rent, and the claim for the actual expense or loss in the stoppage of the machinery; that element is submitted. They say that the stopping of their business, or the stopping of their machinery during the time of removal was an expense to them.] [2]

[Then they claim to have lost by the difference in the terms of the lease with reference to the power to be furnished. You have heard a great deal of testimony about the power that was furnished for the running of this business, the printing establishment of the plaintiff company.  In the lease from Bair & Gazzam to the plaintiff company there was a provision fixing certain terms upon which they could use the power out of ordinary business hours, at night for instance, while they obtained no such privilege by the lease made in the new quarters.  It appears, however, from the testimony, that they

were to be allowed the use of the power at night, or at any time outside of the usual working hours, on the payment of a larger sum of money,—instead of $1.00 an hour as in the old premises, it was $5.00 for the first hour and $1.00 an hour afterwards. That is claimed as a valuable provision in the first lease which they did not have in the lease for the new premises. From the testimony it appears that they did not use it at night in the new premises, and hence they have not suffered any loss. I think one witness said they used it two or three times, at any rate they used it very little, if any, so that an actual loss has not been incurred by this plaintiff company in the failure to. have this provision in the lease. That illustrates.to you the mistake you would make if you would allow this plaintiff company for the loss of these various items, the amounts that have been stated here as the amounts of the loss incurred to this plaintiff company. In other words, it shows the necessity of your not considering these various items of damages, or items going to make up the measure of damages which you are to allow the plaintiff, but only to consider them in finding out, if you can, what the fair market value of this lease was. Was that lease of value over and above the conditions which the tenant, the plaintiff, were obliged to perform; what was its fair market value? I only mention this matter in regard to the difference in the cost of the power to be furnished outside of the regular working hours, as illustrating to you the mistake you would make in allowing the plaintiff these items which he claims, the various items he claims to have lost by reason of this destruction of the lease, except the item of actual expense incurred in moving. That is an item constituting a measure of damages, do not make a mistake in that. But as to the other items you are only to consider them in your efforts to ascertain what market value this lease had, if any. Counsel for plaintiff has properly said to you that he does not claim them as items going to make up the measure of damages, yet they are items for you to consider in ascertaining the market value of this lease, if any. I need not go over the other items, for they are all of the same nature,—one is the difference in the operation of this machinery on one floor instead of on two, as in the new building.] [3]

Plaintiff presented this point:

2. In estimating the value of the plaintiff's leasehold, the jury should take into consideration the costs of removal to and the fitting up their printing plant in the new location, the loss and interruption of its business during the removal, the increase of rent including the increased cost of power, the loss of the privilege of power for working at night, the inconvenience and increased costs of doing business at the new location, and any other facts and circumstances in evidence injuriously affecting plaintiff's property as the direct and necessary result of the appropriation of their leasehold by the defendant. *Answer:* This is affirmed. This is, as you will observe, if you notice carefully its meaning, in the line of my instruction to you ; not that you are to take those items, except the item of the cost of removal, as a measure of damages, but only for your consideration in ascertaining what, if anything, was the fair market value of this lease which the plaintiff has lost. Has he lost anything by it ? It would seem, from the testimony, that the machinery is substantially as good as it was before the removal, but the loss there, as it turns out from the claim made afterwards, was not actual loss, or the injury to the machinery in moving, but the loss which they claim in the operation of the machinery on the two floors instead of the one. But those are simply matters for your consideration in ascertaining if this lease has a market value, and if so what. [9]

Defendant presented these points:

1. It appearing from the evidence that the defendant railroad company, by due corporate action, had by resolution of its board of directors, adopted July 29, 1901, appropriated the property of Henry C. Bair for railroad purposes, and on November 22, 1902, the court of common pleas No. 1 of Allegheny county, Pennsylvania, at No. 182, December Term, 1902, approved absolutely a bond to Henry C. Bair, conditioned to pay him his damages occasioned by the appropriation made July 29, 1901, as aforesaid, the defendant company acquired a complete title to the property of Henry C. Bair for railroad purposes, subject to the right of the various lessees and sublessees therein to compensation for the value of the then current term of their several leases, if any ; and, subject to such leases and subleases, the right of entry and exclusive possession

of the entire property, as of date November 22, 1902. *Answer :* Refused. [10]

2. That by virtue of the adoption by the board of directors of the defendant company of the resolutions of July 29, 1901, appropriating the premises at the southwest corner of Ferry street and Third avenue, first ward, city of Pittsburg, then owned by Henry C. Bair and in the possession of said Bair, his lessees and their sublessees, said premises became the property of, and title therein vested in the defendant railroad company, subject only to the payment of, or securing to, the parties interested, the damages accruing by reason of said appropriation, and any lease made subsequent to that date would be invalid as to the defendant railroad company. *Answer :* Refused. [11]

4. There being no evidence offered in this case, upon the part of the plaintiff, of the value of the unexpired term of the leasehold of the plaintiff in the Bair building, alleged to have been appropriated by the defendant, the measure of damages, under all the testimony,—if the plaintiff is entitled to recover at all,—is the actual amount shown to have been necessarily expended by the plaintiff in the removal of the machinery and other property of the plaintiff from the Bair building to the Imperial building; and if the jury should find that the plaintiff is entitled to recover, your verdict should be for that amount. *Answer :* Refused. [13]

Verdict and judgment for plaintiff for $3,093.79.  Defendant appealed.

*Errors assigned* were (6–11, 13) above instructions, quoting them.

*Willis F. McCook,* for appellant.—The rule of measure of damages where property is appropriated under eminent domain is the same whether the assessment of damages be to the tenant in fee, for life or for years : Phila. & Reading R. R. Co. v. Getz, 113 Pa. 214 ; Warden v. Philadelphia, 167 Pa. 523.

By his contract of lease, plaintiff was bound to remove and bear the expense of removal at the end of his term : Emery v. Boston Terminal Co., 178 Mass. 172 (59 N. E. Repr. 763).

It was error to give plaintiff the value of the lease and in

addition the cost of removal: Moudy Mfg. Co. v. Penna. R. R. Co., 212 Pa. 156; Cobb v. Boston, 109 Mass. 438; Becker v. R. R. Co., 177 Pa. 252; In re New York Central & Hudson River R. R. Co., 35 Hun, 306; Ranlet v. Concord R. R. Corporation, 62 N. H. 561; Dyer v. Wightman, 66 Pa. 425.

*Levi Bird Duff*, with him *L. B. D. Reese*, for appellee.— The appellee was an owner and party interested and entitled to compensation for its leasehold: Railroad Co. v. Davis & Leeds, 26 Pa. 238; Railroad Co. v. Eby, 107 Pa. 166; Railroad Co. v. Getz, 113 Pa. 214; Pittsburg v. Ry. Co., 205 Pa. 13.

OPINION BY MR. JUSTICE FELL, January 7, 1907:

This action was by a subtenant to recover the loss sustained by the taking of the leased property by the defendant in the construction of its road. The plaintiff conducted a printing establishment on the third floor of a building owned by H. C. Bair, who had leased the whole building to the Bair & Gazzam Manufacturing Company for a term of ten years expiring April 1, 1907. The manufacturing company leased the third floor to the plaintiff for a term which expired April 1, 1903, and on January 28, 1903, extended the lease to April 1, 1907. A bond to secure the owner of the building was approved November 22, 1902. At this time municipal consent to enter the city of Pittsburg had not been obtained. Proceedings had been instituted by the city to enjoin the construction of the road and it was decided January 5, 1903, that municipal consent was necessary; see Pittsburg v. Ry. Co., 205 Pa. 13. Consent was obtained in February, 1903, and the defendant by direction of the court of common pleas filed another bond to secure the owner. This bond was approved April 28, 1903. A bond to secure the plaintiff in this case was approved June 6, 1903.

The time of the appropriation of the owner's interest in the building became of importance because of the contention of the defendant at the trial that the extension of the plaintiff's lease on January 28, 1903, was made after the whole building had been appropriated; that the plaintiff acquired no additional right by it, and that the term for the taking of which it could recover ended April 1, 1903, and not April 1, 1907.

The answer to this contention is that the extension of the plaintiff's lease antedated any valid proceedings by the defendant to appropriate the owner's interest in the building. Until consent had been obtained, it had no right to enter the city and it could not appropriate any property therein. The court was therefore right in holding that there was no appropriation until the approval of the second bond, and that the plaintiff's term extended to April 1, 1907.

The instruction as to the measure of damages was that the plaintiff was entitled to recover the value of its lease and in addition thereto the reasonable cost of removing the machinery, and that in determining the value of the lease the increased rental it was required to pay and the actual, direct loss occasioned by the stopping of its machinery might be taken into consideration. That the cost of removing the machinery was submitted as a distinct item for which there could be a recovery and not merely as evidence of the value of the right of which the plaintiff was deprived, is a matter of which the appellant should not now complain. The case was tried by both sides on the theory that there could be a recovery of the cost of removal in addition to the value of the lease. The appellant's counsel asked the court to instruct the jury that, there being no evidence of the value of the unexpired term of the lease, the measure of damages under all the testimony was the actual amount shown to have been expended in the removal of the machinery and other property from the building, and that the verdict should be limited to that amount. When a case has been tried on the ground taken by the appellant at the trial, he should not be heard to question its correctness: Carpenter v. Lancaster, 212 Pa. 581.

Whether in an action by a tenant whose leasehold interest has been taken under the right of eminent domain, the cost of removing machinery used in the business in which he was engaged and losses directly resulting from interruption of the business can be considered, is a question on which the decisions are not harmonious. The market value of the land taken is the test universally applied in an action by an owner, and it is as accurate a measure of his loss as any that can be set up. What he is entitled to is the value of the land ascertained by a fair appraisement, and of this value the selling price of land

similarly situated is prima facie the best evidence. But market value is an unsatisfactory test of the value to a tenant of a leasehold interest. It is really no test at all, because a lease rarely has any market value. Generally it is not assignable at the will of the tenant, and he pays in rent all that the right of occupation is worth. The right of which he is deprived and for which he is entitled to full compensation is the right to remain in undisturbed possession to the end of the term. The loss resulting from the deprivation of this right is what he is entitled to recover. The value of the right he is forced to sell cannot ordinarily be measured by its market price, for there is no market for it, nor can it always be measured by the difference between the rent reserved and the rental value if the lease should be a favorable one. If, as was the case here, a tenant engaged in a business requiring the use of heavy machinery and appliances should secure a new place equally well adapted to his business and at the same rent, he would still be at the expense of removal and at a loss because of the stoppage of his business. These are matters to be considered in connection with others, not as substantive elements of damage, but as tending to prove the value of the leasehold interest.

This subject was considered in Getz v. Railroad Co., a case twice before this court, reported in 105 Pa. 547 and 113 Pa. 214, in which a part of the leased property, used as a marble mill, was taken, compelling a removal of the tenant's business. It was held that in ascertaining the damages to the tenant the value of the lease and also of the machinery and fixtures in place were to be taken into consideration and that, as tending to show the difference in value of the machinery and fixtures before the taking of the property and their value to be removed and applied to the same or other use, the expense of removal was evidence. In Kersey v. Railroad Co., 133 Pa. 234, a part of the tenant's coal yard was taken in building a railroad. Evidence was admitted to show the cost of reconstructing appliances used in the business, the increased cost of handling coal, and the increased waste resulting from breakage, as affecting the value of the leasehold. In Ehret v. Railroad Co., 151 Pa. 158, the plaintiff used the leased premises in carrying out a contract to remove daily from the city gas works large quantities of coal tar, and evidence was received to show the

additional cost necessarily incurred in performing the contract. In none of these cases was there a departure from the rule that the tenant's recovery is restricted to the value of the unexpired term. The evidence was admitted to show this value. Becker v. Railroad Co., 177 Pa. 252, is not in conflict with these cases. The plaintiff there was the owner of the building taken, in which he carried on the business of a merchant tailor. The attempt at the trial was to show the difference between the value of his goods in the store to be sold to his customers and their value if removed and sold elsewhere. This difference was the profit of his business and it had no bearing on the question at issue, the value of the real estate.

The judgment is affirmed.

*Railroads—Eminent domain—Leasehold estate—Extension of lease—Damages—Measure of damages—Evidence—Notice to quit.*