## Apple Storage Company *v.* School District of Philadelphia.

Argued October 6, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Herbert J. Hutton,* with him *Austin Norris* and *Norris, Hutton, Neal & Wells,* for appellant.

*Martin Horowitz,* with him *Edward B. Soken,* for appellee.

OPINION BY JUDGE ROGERS, December 22, 1971.:

This is an eminent domain case. Apple Storage Company, whose warehouse located in West Philadelphia was condemned by the School District, appeals from an order of the Court of Common Pleas of Philadelphia County awarding it a total of $260,000, consisting of $223,000 for real estate, $12,000 for machinery, equipment and fixtures, and $25,000 for moving expenses of personal property. The appellant contends that the court in which the case was tried by a judge sitting without a jury, erred in two respects: first, in limiting its award for moving expenses of personal property to $25,000 in the face of evidence that appellant's actual expense on this account was $60,000; and second, in failing to award appellant anything for business dislocation damages, assertedly despite evidence in the record of substantial loss of business due to the taking.

The trial court limited its award for moving expenses to $25,000 in pursuance of Section 610 of the Eminent Domain Code, Act of 1964, Special Sess., June 22, P. L. 84, 26 P.S. 1-610. When this property was condemned, §610 was as follows: "The person having legal possession shall be entitled to, as damages, the reasonable moving expenses for personal property other than machinery, equipment or fixtures, . . . not to ex-

ceed twenty-five thousand dollars ($25,000) when personal property is moved from a place of business. . . . A tenant may be entitled to recover these moving expenses even though he is not entitled to any of the proceeds of the condemnation. . . ." Almost a year after this condemnation, §610 was amended so as to remove the $25,000 limitation on moving expenses by the Act of 1969, December 5, P. L. 316. However, by specific provision of §3 of that Act, the amendment to §610 and certain other sections of the Eminent Domain Code were made applicable only to condemnations undertaken after its effective date. In the face of this legislative provision that the amendment should have only prospective effect, the appellant's contention, founded on cases construing statutes not so directing as having been intended to have retroactive effect, is without merit. An examination of the statutes construed in *Pope v. Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company*, 176 Pa. Superior Ct. 276, 107 A. 2d 191 (1954) and *In re Malick*, 137 Pa. Superior Ct. 139, 8 A. 2d 494 (1939), relied on by appellant, reveals that unlike the Act of 1969, P. L. 316, *supra*, they were silent on whether they were to be applied prospectively or retroactively, leaving their construction to the courts. Furthermore, neither §610 nor its amendment is curative, remedial, procedural or validating legislation as those terms are used in *Pope, Malick* and other cases within the narrow exception to the general rule that statutes will not be construed as applying retroactively unless a clear intention that they shall be so applied is apparent.

The personal property which the appellant was required to move was household furnishings belonging to customers stored in its condemned warehouse. Appellant argues that §610 does not apply in these circumstances; that it is applicable only to the personal property of the owner of the real estate. The only support

advanced for this contention is the note of the Joint State Government Commission declaring that "This section changes existing law by allowing the condemnee to recover as a separate and additional item his reasonable expenses for moving his personal property." Appellant emphasizes the pronoun "his", and argues that the Commission thus intended the Section to be applied only to the personal property of the owner of the real estate. While we may consider the comment of the Commission (*Tarlo's Estate*, 315 Pa. 321, 172 A. 139 (1934)), we are not persuaded that its use of the word "his" deserves the emphasis placed upon it by the appellant. First, if accepted as determinative of legislative intent, it places the appellant here in peril of losing any compensation for moving the furniture in its warehouse, certainly an unacceptable result. Second, the same comment continues with the statement that the purpose of the section is "to permit the recovery by the condemnee of these moving expenses in addition to the expenses for moving machinery, equipment and fixtures as provided in §608." Since the appellant is a condemnee, this would suggest an intention that he should be entitled to such expenses regardless of the ownership of personal property on his premises. Finally, the possessive pronoun accurately defines the interest of a bailee in personal property in its possession. To permit the tenant of condemned real estate to recover such expenses and to deny them to the owner of the premises obliged to move personal property of others would be plainly unreasonable; and to construe the Act in such fashion would be contrary to principles of statutory construction dictated by good sense and imposed by legislative enactment. The Statutory Construction Act, Act of May 28, 1937, P. L. 1019, Art. IV, §52, 46 P.S. 552.

Appellant's purpose in its effort to remove Section 610 from consideration is to place itself within either

Section 608 or Section 602, under either of which it contends its full expense for moving may be proved. Section 608 allows recovery for moving machinery, equipment or fixtures. It also, however, provided the $25,000 limitation at the time the condemnation of the appellant's warehouse was effected. Section 602 merely defines just compensation as the difference between the fair market value of the condemned property immediately before the condemnation and as unaffected thereby and the fair market value of the property interest remaining immediately after the condemnation and as affected thereby.

The Commission comments that §608 in permitting recovery for moving expenses of machinery, equipment and fixtures adds a new element of damages in eminent domain cases and that §602 codified existing law. The appellant contends, to the contrary of these comments, that under the law existing when the Code was enacted the expenses of moving both machinery, equipment and fixtures and personal property other than machinery, equipment and fixtures were recoverable as a separate and distinct item of damage. It argues, therefore, that the Code by §608 unconstitutionally reduced rather than enlarged the condemnee's rights where machinery, equipment and fixtures are moved; and in the alternative that if §608 does not apply to the property it was required to move, §602, being a codification of existing law, permits recovery for these expenses as a separate item. There is little we can say about these theses except that they are wrong. The courts of this Commonwealth constantly and persistently adhered to the principle that just compensation means the difference between the before and after value of real estate affected and that no recovery might be had as a *separate and distinct item of damages* for the expense of removal either of machinery, equipment and fixtures or of personal property other than machinery, equipment and

fixtures. *Becker v. Philadelphia & Reading R. R.,* 177 Pa. 252, 35 A. 617 (1896); *Philadelphia Ball Club v. Philadelphia,* 192 Pa. 632, 44 A. 265 (1899); *Westinghouse Air Brake Company v. Pittsburgh,* 316 Pa. 372, 176 A. 13 (1934); *Hahn v. City of Bethlehem,* 322 Pa. 129, 185 A. 227 (1936); *Butler Water Company's Petition,* 338 Pa. 282, 13 A. 2d 72 (1940); *Dyer v. Commonwealth,* 396 Pa. 524, 152 A. 2d 760 (1959); *Manganese Steel Forge Company v. Commonwealth,* 421 Pa. 67, 218 A. 2d 307 (1966). The same authorities held, however, that the expense of removing machinery, equipment or fixtures as distinguished from personal property might be considered in determining the before and after value, especially where a leasehold has been taken. *See* Note 92 U. of Pa. L. Rev. 453. To the extent that it conflicts with the general principles above stated, the dictum of *McMillin Printing Company v. Pittsburgh, C. & W. R. R.,* 216 Pa. 504, 511, 65 A. 1091, 1094 (1907), that market value is an unsatisfactory test in valuing a leasehold was overruled by later cases. But even in *McMillin,* the court said, referring, *inter alia,* to the expenses of moving machinery: "These are matters to be considered in connection with others, not as substantive elements of damage, but as tending to prove the value of the leasehold interest." 216 Pa. at 511, 65 A. at 1094. The Eminent Domain Code by §§608 and 610 changed the law by permitting a separate and distinct item of damage for moving expenses both in the case of personal property and of machinery, equipment and fixtures. Judge PETER F. HAGAN's conduct of the trial and his thorough opinion reveal a perfect understanding of the law on this point. His conclusion that §610 was applicable and limited appellant's recovery for its expenses in removing the personal property in its warehouse to $25,000 was correct.

Appellant also argues that §610's limitation of its recovery for moving expenses is an assumption by the

Legislature of the right to determine what is just compensation. This it says is a judicial and not a legislative power. The principle stated is a correct one. However, as we have pointed out, it was the courts who defined the Constitutional right to just compensation as not including the expenses of the removal of personal property as compensable. The Legislature, as the Commission comments, enlarged condemnees' rights.

Appellant's second attack on the order below is directed to the Court's failure to make an award for business dislocation damages which it claims were proved. Section 609 of the Eminent Domain Code provides: "The condemnee shall be entitled to damages, as provided in this section, for dislocation of a business located on the condemned property, but only where it is shown that the business cannot be relocated without substantial loss of patronage. Compensation for such dislocation shall be the actual monthly rental paid for the business premises, or if there is no lease, the fair rental value of the business premises multiplied by the number of months remaining in the lease, not including unexercised options, not to exceed twenty-four months or multiplied by twenty-four if there is no lease. The amount of such compensation paid shall not exceed five thousand dollars ($5,000.00) and shall not be less than two hundred and fifty dollars ($250.00). A tenant shall be entitled to recover for such business dislocation even though not entitled to any of the proceeds of the condemnation." The Joint State Government Commission comments that under this section: ". . . the initial burden is on the claimant to show that the business is of such a local character that it cannot be relocated without substantial loss of patronage. Generally this would be true only of small neighborhood businesses. If this burden is sustained then the section provides a mechanical formula for fixing the amount of compensation for this loss."

Appellant's *entire proof* claimed to bring it within this section was the following testimony of the chairman of its board of directors.

"Q. By reason of this move, have you suffered any loss of business?

"A. We estimate the loss of our business as a result of moving from the location will approximate one-third.

"Q. One-third of what?

"A. Well, the total business that Apple Storage did last year was $500,000—

"Q. Approximately one-third of your former business, you mean.

"A. Yes, . . .

"Q. How many business locations did Apple Storage Company have?

"A. Prior to moving where we are?

"Q. Yes.

"A. Three.

"Q. I am trying to clarify your testimony on 'one-third.' Do you mean one-third of your business was lost from that location, or overall?

"A. We allocated, actually, each business where we are located, to represent one-third of the total business.

"Q. At the subject premises, 248 South 62nd Street, had you ever entertained any notion of moving prior to notice of condemnation?

"A. We had not.

"Q. As the registered owner, did you have any opinion as to the fair rental value of the premises located at 248 South 62nd Street?

"A. Approximately $3,500 to $4,000 per month."
Section 609 places upon the condemnee the burden of proving not merely that it will lose business but that it *cannot relocate without suffering a substantial loss of patronage.* It was encumbent upon appellant to prove that its enterprise was of such a character that it could

not move without losing customers. The record shows that the appellant purchased a warehouse in substitution of the one taken and that the newly acquired facility is in the same general neighborhood as the old and provides substantially more storage area. Further, a close reading of the record shows that the appellant formerly owned three warehouses, including the one here involved, all of which were condemned and that it consolidated all of its operations in the new property. Its chairman's testimony that it allocated one-third of its business to each of its former warehouses and, therefore, could be said to have lost one-third of its total business by reason of the removal caused by this condemnation, is meaningless in the light of the facts that it is still in business and that it says it spent $60,000 in moving from this one location. The court below could not in the circumstances have awarded damages under §609. Judge HAGAN's failure specifically to reject this claim, if inadvertent, was justifiable in view of the indistinct nature of the proofs. In any event, the dismissal of appellant's exception to the judge's decision for its "failure to give $5,000 for business dislocation under Section 609 or even to comment upon it" sufficiently disposed of this matter. See Rule of Civil Procedure 1038(b).

Affirmed.

----

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent. This writer is fully aware of the numerous court decisions to the effect that moving expenses are a gratuity bestowed by the Legislature, not to be included in the constitutional right to "just compensation." However, I have been unable to find any case wherein the expense incurred by a warehouseman in moving bailed goods from premises condemned by the condemning authority has been ruled upon by

any court. As I view it, this case is an exception to the general rule.

Although most legal historians trace the term "eminent domain" to the great Dutch legal writer, Hugo Grotius, about the year 1625 A.D., the fundamental principle that government (or the sovereign) cannot take private property for a public use without the payment of just compensation, has its genesis in five of the sixty-three chapters of the Magna Carta, June 15, 1215 A.D. (See Chapters 28, 29, 30, 31 and 52.)

There can be no doubt that under our system of government the sovereign must have the power to take private property when that taking is necessary for the public good. However, from the early beginning of this country, the Founding Fathers insisted that private property should not be taken for a public use without just compensation being paid. The Fifth Amendment of the United States Constitution reads in part: ". . . Nor shall private property be taken for public use, without just compensation." This was later reaffirmed in the Fourteenth Amendment to the United States Constitution where it is stated: ". . . Nor shall any state deprive any person of . . . property, without due process of law. . . ."

In the Pennsylvania Constitution, Article I, Section 10, we find: ". . . Nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." This section of the Pennsylvania Constitution was once described by our Pennsylvania Supreme Court in the case of *Winger v. Aires,* 371 Pa. 242, 244, 89 A. 2d 521 (1952) : "The power of eminent domain, next to that of conscription of man power for war, is the most awesome grant of power under the law of the land." This power to expropriate property is so great and far-reaching that courts from the beginning of American jurisprudence have had difficulties in developing with

any definite specificity the rights of a citizen to "just compensation." Generally it is the Legislature which exercises or delegates the exercise of the power of eminent domain. In the final analysis, however, it devolves upon the courts to determine whether or not a citizen has received "just compensation" as guaranteed by our Federal and State Constitutions.

In view of the well-recognized principle that every piece of property is unique and therefore not given to the establishment of a firm and fast rule, the facts of each case must be scrutinized in determining the value of the property and the "just compensation" due. The compensation to which an owner is entitled is the full equivalent of the property including total damages inflicted as a result of the taking, disregarding the value of the benefits derived by the condemnor.

In essence the law must strive to place the condemnee in as favorable a pecuniary position as he would have been but for the condemnation. In no event should a citizen be placed in a position whereby he sustains losses or damages in excess of that governmental compensation. Each and every element of value or damage ordinarily and naturally resulting from the taking of the property in eminent domain must be considered in arriving at "just compensation." This is not to say that the compensation must include some personal value which a citizen places upon his property, provided, however, that if a piece of property or a building has a special use or value peculiar to the use which the citizen makes of that property, that additional worth should be included in the value to be placed upon the property taken. Similarly, should a citizen prove that the property taken causes a special damage to him, which can be measured in money, he should have the right to have that value or loss considered in the "just compensation" he receives. It is of no moment that the special value proven to exist causes no benefit to the condemnor.

What does have moment is that the property taken has caused a proven special damage to the owner.

If in determining the market value (1) the court uses as a measure the price which would be agreed upon by a voluntary sale between an owner willing to sell and a purchaser willing to buy, (2) the seller would demand a higher price for his property because of a peculiar use which he makes of that property, (3) that he would not be willing to sell it for less than an amount which includes this unique value or expense, and (4) that is proven on the record; then that additional peculiar value or expense should be a part of the "just compensation." *See Harvey Textile Co. v. Hill*, 135 Connecticut 686, 67 A. 2d 851 (1949), and *Blincoe v. The Choctaw, O. & W. R. R. Co.*, 16 Oklahoma 286, 83 P. 903 (1905). In other words, if the condemnee owns and operates a warehouse under circumstances whereby he would not be a willing seller unless the price for the property included the cost of moving the stored materials of others, then "just compensation" must include that additional cost to the condemnee. To do otherwise is to deprive the condemnee of his constitutional right to "just compensation". Whether one calls this cost a damage to the condemnee or an added value to the property is not important insofar as constitutional rights are concerned.

The majority makes much over the fact that Section 610 of the Eminent Domain Code, Act of June 22, 1964, Special Session, P. L. 84, 26 P.S. 1-610, provided for a maximum award for moving expenses in the amount of $25,000.00, and that almost a year after the condemnation Section 610 was amended to remove the $25,000.00 limitation. The majority thereby concludes this condemnee could not recover more than $25,000.00 because the amendment acted solely prospectively in its application. Under my reasoning, once the Legislature recognizes that moving expenses, if proven, are a legitimate

part of constitutional "just compensation", then if the citizen proves damages in excess of the maximum allowed by the Legislature, that statutory maximum must fall as unconstitutional. In this case, however, I would hold that it is not necessary to rely upon Section 610 in arriving at this condemnee's damages as proven in the record of this case.

In applying my reasoning to this case, I first refer to the "just compensation" provision of the Pennsylvania Constitution set forth above. I next look to what the Legislature comprehends as just compensation in Section 601 of the Act, *supra,* 26 P.S. 1-601, which states: "The condemnee shall be entitled to just compensation for the taking, injury or destruction of his property, determined as set forth in this article."

In Section 602 of the Act, *supra,* 26 P.S. 1-602, "just compensation" is described as: "Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this article."

"Fair market value" is described in Section 603 of the Act, *supra,* 26 P.S. 1-603 as follows: "Fair market value shall be the price which would be agreed to by a willing and informed seller and buyer, taking into consideration, but not limited to, the following factors:

"(1) The present use of the property and its value for such use.

"(2) The highest and best reasonably available use of the property and its value for such use.

"(3) The machinery, equipment and fixtures forming part of the real estate taken.

"(4) Other factors as to which evidence may be offered as provided by Article 7."

In Article VII, Section 705 of the Act, *supra,* 26 P.S. 1-705, we find: ". . . (1) A qualified valuation expert may, on direct or cross-examination, state *any or all facts and data* which he considered in arriving at his opinion, whether or not he has personal knowledge thereof, and his statement of such facts and data and the sources of his information shall be subject to impeachment and rebuttal." (Emphasis added.)

Finally in Section 704 of the Act, *supra,* 26 P.S. 1-704, the statute reads: *"The condemnee* or an officer of a corporate condemnee, without further qualification, may testify as to just compensation. . . ." (Emphasis added.)

In this case we have a condemnee who has proven on the record that as a result of a taking under eminent domain he will be damaged, among other things, in the amount of $60,000.00 which he was required to pay for the removal of bailed property stored in his warehouse. From the point of view of this condemnee, it matters not whether one views this from a value concept, or expenses incurred, or damages suffered. Apple Storage Company has not received "just compensation." In view of the fact that the order of the court below did not include the full amount of the moving expense incurred by the condemnee, as proven in the record, and the court restricted the condemnee to a maximum arbitrarily set by the Legislature, this condemnee's constitutional rights have been violated.

To further emphasize the point I make, had the cost of removal incurred by this condemnee exceeded the gross award which was made to it under the condemnation proceedings, this condemnee would then be forced to expend its own money to aid the government to condemn its property. The record incontrovertibly indicates the expenditure of $60,000.00 by the condemnee in order to remove the property bailed in the condemned premises. The record is devoid of any evidence that this

condemnee would have willingly sold this property absent the inclusion of this removal expense in the selling price. There is not one word in the record of this case which would support the Legislature's arbitrary setting of moving expenses at $25,000.00 for all citizens, under every circumstance of every conceivable condemnation. The fact that Section 610 was amended certainly supports the argument that the $25,000.00 maximum was inadequate.

I have read the cases cited by the majority, and the majority is correct that the courts of this Commonwealth have held that the expense for the removal of "machinery, equipment and fixtures or personal property, other than machinery, equipment and fixtures", are a separate and distinct item of damage. But none of these cases holds that a warehouseman whose property is taken cannot have included in his "just compensation" the damages he suffers by virtue of the removal of the property which has been bailed to him, or the value he would have placed upon the condemned property as a willing seller.

Viewing this condemnation from every vantage point, this writer arrives at the conclusion that this condemnee never became a willing seller insofar as he was deprived of moving expenses. This condemnee is entitled to one hundred percent of both the value of property taken and the damages caused to him by this taking, no more and certainly no less. I would reverse the court below and add an additional $35,000.00 (the difference between the proven $60,000.00 and the award of $25,000.00) to the award given by the court below.

Although the condemnee's witness was not fully articulate, I would hold that there was adequate testimony in the record to establish as a matter of law the condemnee's right to an award of $5,000.00, for business dislocation damages, which was disallowed by the court below.

Judge CRUMLISH, JR., joins in this dissent.

CONCURRING AND DISSENTING OPINION BY JUDGE MANDERINO:

I concur with that portion of the majority opinion which holds that there was insufficient proof to substantiate the claim for business dislocation damages under Section 609 of the Eminent Domain Code. I dissent, however, because the $25,000 limitation contained in Section 610 of the Eminent Domain Code is invalid and serves to deprive the condemnee of the just compensation which is constitutionally required. On this point I concur in Judge KRAMER's dissenting opinion.