## Swager v. Redevelopment Authority of the City of Chester

*Murray S. Eckell,* for plaintiffs.
*Samuel M. Tollen,* for defendant.

REED, Jr., J., May 10, 1972.—On March 17, 1971, pursuant to a negotiated settlement in lieu of con-

demnation, plaintiffs transferred title to their property at 1100 and 1106 West Ninth Street in the City of Chester, to defendant, Redevelopment Authority (herein Authority) for the sum of $85,000.

Plaintiffs' property had been used by them to conduct their business known as "Ed's Auto Body & Fender Shop." The settlement agreement, nevertheless, reserved to plaintiffs the right to proceed under the provisions of the Eminent Domain Code of the Commonwealth (hereinafter referred to as "code" and cited in pertinent parts) for reimbursement for business dislocation expenses, moving expenses and closing expenses incidental to the purchase of a new business property.

On May 28, 1971, plaintiffs did acquire a replacement property at 775-81 Upland Avenue, Upland, Delaware County, Pa. On July 22, 1971, plaintiffs filed a petition for appointment of viewers pursuant to section 502 of the code (Act of June 22, 1964, P. L. 84, Art. V, sec. 502 as amended, 26 PS §1-502) alleging damages: $5,000 for dislocation expenses (section 609 of the code) and $1,342.50 for expenses incidental to the purchase of the new property: Section 616 of the code. On even date therewith, viewers were appointed. On August 11, 1971, plaintiffs filed an amended petition adding another claim in the amount of $4,196 for moving expenses: Section 608 of the code.

On October 4, 1971, Authority filed preliminary objections to plaintiffs' petition to·strike their claim for damages for closing expenses incurred at settlement of and incidental to the purchase of the new property in the amount of $1,342.50.*

---

* Expenses included title company charges, $530.50; recording deed, $10; notary public, $2; and State transfer tax, $800; total, $1,342.50.

On October 5, 1971, plaintiffs filed a motion to strike Authority's preliminary objection on the grounds that they were improper, that the plaintiffs-condemnees are by law entitled to receive such expenses, and also because the preliminary objections were not timely filed.

With these respective filings, the question raised is one of law and comes to this: Under the code, is the Authority legally bound to pay costs incurred at settlement in the category of closing expenses incidental to the acquisition of the replacement business property, as it is for such expenses in replacement housing?

We will come to an answer of that question in this case by dealing with three issues which we believe are involved:

1. Does the Authority have the right to file preliminary objections to appointment of viewers and, if so, were they timely filed?

2. Does the Eminent Domain Code provide for reimbursement of closing expenses incidental to acquisition incurred at settlement on the replacement business property?

3. If so, what constitutes such incidental settlement, closing expenses?

1. The Authority-condemnor does have the right to file preliminary objections to a petition for appointment of viewers.

The code, at Article V, sec. 504, 26 PS §1-504, provides, in pertinent part:

"Any objection to the appointment of viewers not theretofore waived *may be raised by preliminary objections filed within twenty days after receipt of notice of the appointment of viewers* . . . The court shall determine promptly all preliminary objections

and make such orders and decrees as justice shall require." (Italics supplied.)

This gives the Authority the right to file preliminary objections and the court power to dispose of them.

Such objections may be filed within 20 days after notice of appointment of viewers. The same section 504 provides *that the viewers* are to give notice within 20 days of their appointment. This record is silent as to when such notice was given. In any event, plaintiff-condemnees have not pressed this point, and we assume, therefore, the Authority's preliminary objections were timely filed. Although we would be inclined to decide that the 20-day period is directory and not mandatory, we further note that plaintiffs, being the moving party petitioners, have not offered or filed any certification or affidavit as to when or if such notice was actually given the Authority.

Accordingly, we conclude the case is properly before us for disposition on its merits.

2. The Eminent Domain Code does provide for reimbursement of closing-settlement expenses incidental to the purchase of replacement business property.

The Eminent Domain Code, supra, provides at section 616, 26 PS §1-616, in pertinent part, as to the condemned property:

"*In addition to the amounts of damages otherwise* authorized, the condemnor shall reimburse the *condemnee* for reasonable and necessary expenses *incurred for recording fees, transfer taxes, and similar closing expenses* incidental to conveying such property . . ." (Italics supplied.)

and as to the replacement property:

"The condemnor shall also reimburse the condemnee for reasonable and necessary expenses

incurred *for recording fees and similar closing expenses* incurred by the condemnee on the replacement property . . ." (Italics supplied.)

The code at section 201, 26 PS §1-201, defines condemnee as:

"the owner of a property interest taken, injured or destroyed . . ."

Section 616, supra, referring to condemnee, does not distinguish between owners of housing and owners of a business. A condemnee, therefore, by definition includes both classes of owners.

Authority asserts that section 608 of the code, 26 PS §1-608, which provides for business equipment removal expenses, and section 609 which provides for business dislocation damages, are the sole and exclusive allowances for the business-condemnee over and above the compensation he receives for the value of his condemned property. We disagree. Both sections concern themselves with expenses entirely unrelated to closing expenses, and they do not limit the condemnee in any way to the damages enumerated therein. Section 616 makes no restrictions either.

A reading of section 616, supra, leads us to the conclusion that "closing expenses" not only in reference to the condemned property, but also to the replacement property are due to the homeowner-condemnee and the business property owner-condemnee, in addition to the other damages to which they may be entitled otherwise under the code. Plaintiffs-condemnees timely purchased their business replacement property and are, therefore, entitled to "closing expenses."

3. The incidental closing expenses allowed a condemnee are limited to only those expenses allowed by the Eminent Domain Code.

Plaintiffs' claim for expenses includes:

| | |
|---|---:|
| Title company charges | $530.50 |
| Recording of deed | 10.00 |
| Notary public | 2.00 |
| State transfer tax | 800.00 |

These are proper closing expenses.

In construing a statute, general expressions must be restricted to things similar to those specifically enumerated in the preceding language: Act of May 28, 1937, P. L. 1019, art. III, sec. 33, 46 PS §533; Commonwealth v. Simmons, 211 Pa. Superior Ct. 344, 236 A. 2d 563 (1967). Closing expenses for replacement property are, therefore, restricted to those expenses which are related to closing expenses.

Title company charges involve, for the most part, a fee for searching and insuring the title to the acquired property and necessary to the transfer of title, which is closing of the transaction, as are transfer taxes, and are, therefore, allowed.

In so deciding, we are cognizant of Act No. 169, approved by the Governor on December 29, 1971, and effective that date, further amending the Eminent Domain Code, and specifically repealing section 616, supra.

Under that act, in defining "Displaced Persons," both residential and business condemnees are embraced. Plaintiffs are, therefore, covered by this act.

This Act of 1971 is made applicable to all persons who have become displaced after January 2, 1971, which includes plaintiffs (Act No. 169, section 606A) with, however, this saving clause:

" . . . anyone displaced . . . after January 2, 1971 and prior to the effective date of . . . this amending act [December 29, 1971], shall be entitled to the greater of any item of special damages for displacement as

provided in this [Act] or as provided in any prior law."

Hence, plaintiffs are entitled to be reimbursed for the expenses noted herein and which they incurred in the acquisition of their replacement property.

## ORDER

And now, to wit, May 10, 1972, it is hereby ordered and decreed that plaintiffs' motion to strike defendant Redevelopment Authority's preliminary objections is hereby dismissed, and defendant Redevelopment Authority's preliminary objections are denied.