Redevelopment Authority of the City of Chester, Appellant, v. Edward J. Swager and Thelma A. Swager, His Wife, Appellees.

Argued October 2, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Samuel M. Tollen,* for appellant.

*Thomas L. Kelly,* with him *Eckell, Sparks, Vadino, Auerbach & Monte,* for appellees.

OPINION BY JUDGE CRUMLISH, JR., March 11, 1974:

On or about March 5, 1971, the Redevelopment Authority of the City of Chester (Authority) and Edward J. and Thelma A. Swager (Swager) entered into an option agreement for the purchase of real estate owned by Swager in the City of Chester. Located on this property was a business known as "Ed's Auto Body & Fender Shop" which was owned and operated by Swager. The agreement granted to the Authority the option to purchase the property for the sum of Eighty-Five Thousand ($85,000.00) Dollars. The agreement

also reserved to Swager the right to proceed under the appropriate provisions of the Eminent Domain Code, Act of 1964, Special Sess., June 22, P. L. 84, as amended, 26 P.S. §1-101 *et seq.*, for reimbursement for business dislocation expenses, moving expenses, and closing expenses incidental to the purchase of new business property. The option was exercised by the Authority and settlement was made on March 17, 1971.

On May 28, 1971, Swager acquired replacement property and subsequently, on or about July 22, 1971, after moving his business to the new location, filed a petition for the appointment of viewers with the Court of Common Pleas of Delaware County. A Board of Viewers was appointed that day. The petition claimed business dislocation damages and expenses incidental to the purchase of the replacement property. Thereafter Swager amended the petition to include moving expenses.

Following a hearing before the Board on October 12, 1971, it filed a report in the lower court, awarding Swager business dislocation damages in the amount of Five Thousand ($5,000) Dollars and moving expenses in the amount of Four Thousand One Hundred and Ninety-Six ($4,196.00) Dollars. The moving expenses were subsequently paid by the Authority. The Board did not decide the issue of expenses incidental to the acquisition of the replacement property as that matter was before the Court of Common Pleas of Delaware County which subsequently decided the issue against the Authority.[1] This award was also paid.

On April 18, 1972, the Authority appealed the award of $5,000 to the lower court. A trial without jury was held, after which the Honorable FRANCIS J. CATANIA filed an opinion and order which awarded Swager business displacement damages in the sum of Ten Thousand

---

[1] *Swager v. Redevelopment Authority of the City of Chester*, 58 Pa. D. & C. 2d 46 (1972).

($10,000) Dollars,[2] reasonable attorney's fees in the sum of Two Thousand Three Hundred ($2,300) Dollars, and delay compensation on Five Thousand ($5,000) Dollars from March 20, 1972, to the date of payment.

On February 7, 1973, the Authority appealed this order to this Court.

The Authority presses three contentions which, in effect, challenge the entire order of the lower court. First, the Authority argues that the award of business location damages to Swager was improper. Secondly, the Authority contends that the lower court erred in awarding "reasonable attorney's fee of $2,300" and finally, the Authority argues that the lower court's award of delay compensation was in error and improper in this factual posture.

We shall discuss the issues in that order.

The testimony presented to the lower court was that Swager moved his auto shop business from its former premises at 1100 West Ninth Street, Chester, to 775 Upland Avenue, Upland on July 20, 1971. The provision of the Eminent Domain Code relating to business dislocation expenses in effect at that time was Section 609 of the Code which reads as follows: "The condemnee shall be entitled to damages, as provided in this section, for dislocation of a business located on the condemned property, but only where it is shown that the business cannot be relocated without substantial loss of patronage. Compensation for such dislocation shall be the actual monthly rental paid for the premises, or if there is no lease, the fair rental value of the business premises, multiplied by the number of months remaining in the lease, not including unexercised options, not to exceed twenty four months or multiplied by twenty four if there is no lease. The amount of such compensation

---

[2] The reason for the $5,000 increase in the business dislocation damage award will be explained later.

paid shall not exceed five thousand dollars ($5,000) and shall not be less than two hundred fifty dollars ($250). A tenant shall be entitled to recover for such business dislocation even though not entitled to any of the proceeds of the condemnation." Eminent Domain Code, Act of June 22, 1964, P. L. 84, §609.

The Board of Viewers, relying on that statutory provision, allowed Swager $5,000 business dislocation damages. This award was appealed by the Authority.

However, by the Act of December 29, 1971, P. L. 635, §6, that statute was repealed. The subject of business location damages is now covered by the Eminent Domain Code, 26 P.S. §1-601A(b) which reads in pertinent part: "b(3) In addition to damages under clauses (1) or (2) of this subsection, damages of not more than ten thousand dollars ($10,000) nor less than twenty-five hundred ($2,500), in an amount equal to either (i) forty times the actual monthly rental, in case of a tenant, or forty times the fair monthly rental value, in the case of owner-occupancy, or (ii) the average annual net earnings, whichever is greater. For the purposes of this subsection, the term 'average annual net earnings' means one-half of any net earnings of the business or farm operation before Federal, State, and local income taxes, during two taxable years immediately preceding the taxable year in which such business or farm operation moves from the real property acquired for such project, and includes compensation paid by the business or farm operation to the owner, his spouse, or his dependents during such period. The regulations promulgated under Section 604A may designate another period determined to be more equitable for establishing average annual net earnings, provided the designation of such period does not produce a lesser payment than would use of last two taxable years. In the case of a business, payment shall be made under this subsection only if the business (i) cannot be relocated with-

out a substantial loss of its existing patronage, and (ii) is not a part of a commercial enterprise having at least one other establishment not being acquired by the acquiring agency, which is engaged in the same or similar business."

The lower court agreed with the Board that an award of business dislocation damages was proper here. The lower court in addition, citing Section 606A of the Eminent Domain Code,[3] increased the amount of business location damages due Swager to the maximum Ten Thousand ($10,000) Dollars provided in Section 601 A.

The Authority strenuously argues that the lower court erred in using Swager's *net income* figures and not his *gross income* in determining if he is entitled to business dislocation damages. The Authority points out that the gross income of Swager increased even though the move to the present location was made on July 20, 1971, and despite the effect of the devastating flood of September, 1971.

We disagree with the Authority on this count following the reasoning of the court below.

Analyzing Section 601A(b)(3), the amount of business dislocation damages is calculated in one of two ways:

(1) Forty (40) times the fair monthly rental value of the originally acquired property, or

(2) The average annual net earnings of the business, whichever is greater.

---

[3] This section provides that the provisions of Article VI-A of the amending Act of December 29, 1971, shall apply to all persons who have become displaced persons on or after January 2, 1971. This section goes on to state that any person displaced on or after January 2, 1971, ". . . shall be entitled to the greater of any item of special damages for displacement as provided in this Article VI-A as provided in any prior law."

Since Swager was displaced after January 2, 1971, he is eligible for the $10,000 maximum provided under Section 601A.

If one reads further in Section 601A(b)(3), the statute defines "average annual net earnings" as: ". . . one-half of any net earnings of the business . . . before Federal, State, and local income taxes, during the two taxable years immediately preceding the taxable year on which such business . . . moves from the real property acquired. . . ."

An examination of Swager's tax returns during the two years preceding the taxable year in which he moved, indicates that he is entitled to the maximum $10,000 in business dislocation damages.

Faced with these figures and statutory language, Authority argues that *gross income* should be used to determine if one is entitled to business dislocation damages *with net income* then used to determine the dollar amount due to those so entitled.

As stated in Section 601A(b)(3), to be entitled to dislocation damages, the owner of the business must show the business ". . . cannot be relocated without a substantial loss of *existing* patronage. . . ." (Emphasis supplied.) We emphasize the term "existing" because the Section on business dislocation prior to the 1971 Amendments omits this word. Therefore, prior to 1971, the period of time examined in determining loss of damages was unclear. The lower court reasoned, and we agree, that the addition of the word "existing" by the Legislature established a limited time frame within which the court was to consider whether a condemnee had suffered a loss in earnings due to the forced moving of his business. Without this limitation, an operation which sustained a loss of business initially, but which later acquired new business might not be entitled to business dislocation damages. However, under Section 601A(b)(3), a business which eventually prospers at its new location is still entitled to business dislocation damages. Therefore we find it entirely proper that the lower court reject Authority's argument that a com-

parison of gross receipts must be used to first determine if business dislocation damages are appropriate.

The Authority directs our attention to *Apple Storage Company v. School District of Philadelphia*, 4 Pa. Commonwealth Ct. 55, 284 A. 2d 812 (1971), where this Court determined, under that factual posture, that business dislocation damages were not warranted. In *Apple Storage, supra*, we acknowledged (1) that the burden of proving such dislocation damages lay with the condemnee, and (2) that the burden in that case was not carried. Suffice it to say that this is not the situation. Our review of the record and exhibits introduced by Condemnee Swager convinces us that he carried his burden of proof on this issue and the court below was correct in awarding Swager $10,000 in business dislocation damages.

Authority next argues that the lower court erred in awarding Swager $2,300 in attorney's fees. Again we must disagree with the Authority.

Section 609 of the Eminent Domain Code provides: "Where proceedings are instituted by a condemnee under Section 502(e), a judgment awarding compensation to the condemnee for the taking of property shall include reimbursement of reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred." 26 P.S. §1-609.

Authority contends that since the "property" here was acquired without contest, Section 1-609 does not apply.

Although we see some merit to the argument, we find two compelling reasons to reject its contention. First, the option agreement entered into by both parties states that "[n]othing herein contained shall be construed as preventing the grantor hereunder to proceed to obtain any other damages which may be recoverable under the Redevelopment Authority Act or Eminent Domain Code. . . ."

Although the real property in question here was acquired amicably, this portion of the option agreement, later exercised by the Authority, allows reasonable attorney's fees.

Moreover, Swager proceeded under Section 502(e) for the appointment of viewers and to date, has received moving expenses and expenses incidental to the acquisition of replacement property.[4] Accordingly, since these proceedings were begun under Section 502(e), a mode of action specifically permitted by the option agreement, the Authority cannot now deny Swager reasonable attorney's fees.

Finally, Authority attacks the imposition of delay compensation at the rate of 6% on $5,000.

Section 1-611 is the section of the Eminent Domain Code dealing with delay compensation and it reads as follows: "The condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation, nor during such period shall a condemnor be entitled to rent or other charges for use and occupancy of the condemned property by the condemnee. Compensation for delay in payment however, be paid at the rate of six per cent per annum from the date of relinquishment of possession of the condemned property by the condemnee, or if the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation; Provided, however, That no compensation for delay shall be payable with respect to funds paid on account, or by deposit in court, after the date of such payment or deposit. Compensation for delay shall not be included

---

[4] In *Swager v. Redevelopment Authority of the City of Chester*, *supra*, the Court of Common Pleas of Delaware County determined that Swager, proceeding under Section 502(e), was entitled to expenses incurred in the acquisition of replacement property. These expenses were later paid by Authority.

by the viewers or the court or jury on appeal as part of the award or verdict, but shall at the time of payment of the award or judgment be calculated as above and added thereto. There shall be no further or additional payment of interest on the award or verdict." 26 P.S. §1-611.

Authority stresses the language of this section relating to the relinquishment of condemned property and the time during which the 6% will be computed. Authority argues that this section applies only to one aspect of the money the Condemnee may be entitled to, i.e., his compensation for real estate and since the value of the real estate was amicably settled, Section 1-611 and delay compensation does not apply to business dislocation damages.

With this contention we must agree. The language of the statute clearly applies only to *condemned property* and when and how delay compensation shall be computed on the value of the *condemned property.* There is no indication that delay compensation should be paid on business dislocation or other "special damages" and the lower court erred in so doing.

Accordingly, we enter the following

### ORDER

AND Now, this 11th day of March, 1974, the Order of the Court of Common Pleas of Delaware County dated January 15, 1973, is affirmed as it relates to the award of $10,000 business dislocation damages and the award of $2,300 reasonable attorney's fee. That part of the Order which granted delay compensation at the rate of 6% on $5,000 from March 20, 1972 is hereby reversed.