Bob J. White et al. *v.* Redevelopment Authority, City of McKeesport. Julian W. Panek and Mary Panek, t/d/b/a Lawrence The Florist, Appellants.

308

Argued May 5, 1982, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and MAC-PHAIL, sitting as a panel of three.

*John M. Tighe,* with him *Martin F. P. Vinci III, Tarasi & Tighe,* for appellants.

*Thomas J. Dempsey,* for appellee.

OPINION BY JUDGE WILLIAMS, JR., October 8, 1982:

Julian W. Panek and Mary Panek (Paneks) have appealed from an order of the Court of Common Pleas of Allegheny County that granted them only part of the relief they requested in a "petition to enforce a settlement agreement." The agreement in question had been entered into by the Paneks and the Redevlopment Authority of the City of McKeesport (Authority) in the course of eminent domain litigation.

In 1973, the Authority formally condemned a property at which the Paneks, as tenants, operated a florist business. As a result of the condemnation the Paneks had to relocate their business. The Paneks sought to obtain business dislocation damages under Section 601-A.(b)(3) of the Eminent Domain Code (Code);[1] but that claim was denied by the board of viewers.

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* added by Section 8 of the Act of December 29, 1971, P.L. 640, 26 P.S. §1-601A.(b)(3).

The viewers' award, entered in September 1976, allowed the Paneks only an attorney fee under Section 610 of the Code,[2] in the amount of $500.

The Paneks' appeal from the viewers' award suffered a compulsory non-suit; and the trial court's denial of a motion to remove the non-suit was affirmed by our Court on December 15, 1980. *Panek Appeal*, 55 Pa. Commonwealth Ct. 327, 423 A.2d 472 (1980). The Paneks' petition to the Pennsylvania Supreme Court for an allowance of appeal was denied.

About June 20, 1979, before the mentioned non-suit had become a final judgment of the trial court, the Paneks and the Authority entered into an agreement that is the underlying subject of the instant appeal.[3] Under the agreement the Authority was to pay the Paneks, pursuant to Section 601-A(b)(4) of the Code,[4] the sum of $900 to reimburse them for expenses they incurred in searching for a new business site. The agreement also provided for the payment of the $500 attorney fee the board of viewers had awarded. According to the Paneks, the Authority agreed to pay these monies by June 30, 1979.

When almost two years elapsed without the Authority making payment as agreed, the Paneks sought to obtain judicial enforcement of the June 1979 agree-

---

[2] 26 P.S. §1-610.

[3] The docket entries from below do not clearly reflect the precise date upon which the non-suit was initially entered. However, the non-suit had to have been entered on or before April 23, 1979; because that was the date upon which the Paneks filed a motion to remove the non-suit. The Paneks' motion was denied on October 19, 1979; and judgment pursuant to the non-suit was entered on November 8, 1979. In other words, when the agreement was entered into, about June 20, 1979, the Paneks had already suffered a non-suit in the underlying eminent domain case, even though the non-suit had not become a final judgment as of that time.

[4] Added by Section 8 of the Act of December 29, 1971, P.L. 640, 26 P.S. §1-601A(b)(4).

ment. In June 1981, they filed in the Court of Common Pleas of Allegheny County a "petition to enforce settlement." The petition requested, first, that the Authority be directed to pay the $1400 it had agreed to pay, together with interest on that sum at a 6% annual rate as *detention damages* under the Code. The petition also requested that the Authority be ordered to turn over to the Paneks all interest it earned on the unpaid monies, and to pay an additional attorney fee for the legal efforts required to obtain payment of the agreed sum.

The Court of Common Pleas treated the Paneks' petition as a petition for a rule to show cause, and then declined to issue a rule. That notwithstanding, the court did direct the Authority to pay $900 to the Paneks and $500 to their attorney, which amounts were the very ones involved under the agreement between the parties. The court further directed that payment be made immediately. The court's order, which was dated June 30, 1981, denied all other relief requested by the Paneks' petition. From that order the Paneks filed the present appeal.[5]

In this appeal the Paneks complain, first, that the lower court erred in denying them "detention damages" under the Code to compensate for the Authority's delay in paying (1) the $900 in search expenses and (2) the $500 attorney fee. That assertion must fail, under our decision in *Redevelopment Authority of the City of Chester v. Swager,* 12 Pa. Commonwealth Ct. 437, 316 A.2d 136 (1974). In *Swager* we held that delay compensation, as "detention damages" are called under Section 611 of the Code,[6] is not payable on items of "special damages." Clearly, the

---

[5] The appellants' brief states that the Authority paid the amounts ordered by the court.

[6] 26 P.S. §1-611.

search expenses under Section 601-A(b)(4) are "special damages": Section 601-A(b)(4) is contained in Article VI-A of the Code, and the very title of that Article describes the damages allowed thereby as being "special damages."[7] The basis for the holding in *Swager* was our conclusion that delay compensation is warranted only for a delay in paying the *value of the condemned property.* Under that reasoning, delay compensation cannot be applicable to unpaid attorney fees, either.

Regarding the Paneks' demand that the Authority pay over to them all interest allegedly earned on the unpaid monies, we conclude that the court below properly denied the claim. That claim, as the Paneks concede in this appeal, is one sounding in restitution for unjust enrichment. In our view, such a claim is in the nature of an independent, original action in law or equity. And, it is well settled that, unless specifically permitted by statute, an original action cannot be commenced by a petition. *W. Garlick and Sons, Inc. v. Lambert,* 446 Pa. 323, 287 A.2d 143 (1972); *Hartmann v. Peterson,* 438 Pa. 291, 265 A.2d 127 (1970); *DiCenzo Appeal,* 52 Pa. Commonwealth Ct. 595, 416 A.2d 617 (1980).

As for the claim for an *additional* attorney fee, to reimburse the Paneks for the legal expense of trying to obtain payment pursuant to the Authority's Agreement, we are constrained to hold that the law does not provide such relief under the circumstances of this case. It is a general rule that, in the absence of a private agreement or statutory provision to the contrary, each party to adversary litigation must pay his own counsel fees. *E.g., Chatham Communications, Inc. v. General Press Corp.,* 463 Pa. 292, 344 A.2d 837 (1975).

---

[7] The title of Article VI-A is *"Special Damages* for Displacement." (Emphasis added.)

There is no contention, in the instant case, that the agreement in question made any mention of an attorney fee beyond that which had already been awarded by the board of viewers. Moreover, the $500 fee that the viewers awarded, and the Authority agreed to pay, is the maximum attorney fee allowable under Section 610 of the Code, which governs the fees for the kind of condemnation proceeding that formed the context of the present matter. In short, the additional attorney fee sought by the Paneks is not a fee for which authorization can be found in the Eminent Domain Code.

In their claim below for the additional attorney fee, the Paneks alleged that the Authority had been malicious, arbitrary and vexatious in delaying so long to pay the monies agreed upon. Based on that allegation, the Paneks further asserted that Sections 2503(7) and (9) of the Judicial Code[8] entitle them to the additional fee as a sanction against the Authority. That assertion has been renewed in this appeal.

Section 2503(7) of the Judicial Code entitles a participant in litigation to receive an attorney fee as a sanction against another participant "for dilatory, obdurate or vexatious conduct *during the pendency of a matter.*" (Emphasis added.) Under Section 2503 (9), such a fee is to be allowed to a participant in litigation where "the conduct of another party *in commencing the matter or otherwise* was arbitrary, vexatious or in bad faith." (Emphasis added.)

Section 2503(7), by its very terms, relates only to conduct that takes place during the pendency of a matter. The term "matter" is defined by Section 102 of the Judicial Code to mean "[a]ction, proceeding or appeal."[9] Since, in the instant case, there was no

---

[8] 42 Pa. C. S. §§2503(7), 2503(9).

[9] 42 Pa. C. S. §102.

"action" with respect to the settlement agreement until the Paneks filed their petition, it cannot be said that the Authority's conduct prior to that filing could come within the terms of Section 2503(7). In other words, the Authority's conduct, in not paying the amounts agreed upon, was not conduct that took place during the pendency of the "matter" concerning the agreement.[10] Section 2503(9), on the other hand, is concerned initially with a party's conduct in *commencing* a matter. And, as we construe the words "or otherwise," that phrase in Section 2503(9) is a reference to a party's conduct in raising *defenses. See Santoro v. City of Philadelphia,* 59 Pa. Commonwealth Ct. 114, 429 A.2d 113 (1981). It certainly cannot be said that when the Authority delayed in paying the Paneks it was either commencing or defending a "matter."

Although we by no means applaud the Authority's conduct relative to its agreement, the posture of the appellants' case does not permit the relief they seek in this appeal.

For the reasons set forth, we affirm the order of the court below.

### ORDER

AND Now, the 8th day of October, 1982, the order of the Court of Common Pleas of Allegheny County, dated June 30, 1981, at No. 2892 of April Term 1973, is affirmed.

---

[10] Nor can it be said validly that the Authority's delay in making payment pursuant to the agreement was "dilatory, obdurate or vexatious conduct" relative to the underlying eminent domain proceedings. The Paneks had already suffered a non-suit as to that matter before the agreement was even entered into; and nothing remained before the trial court in that respect except the Paneks' motion to remove the non-suit, which was denied just a few months after the agreement.